R. J. ADREANI *et al.*, Plaintiffs-Appellants, *v.* DOUGLAS W. HANSEN *et al.*,
Defendants-Appellees.

First District (3rd Division)   No. 79-616

Opinion filed January 30, 1980.

Bernstein & Yalowitz, Ltd., of Chicago, for appellants.

Morgan, Lanoff, Denniston & Madigan, Ltd., of Chicago (James E.
McParland, of counsel), for appellee Douglas W. Hansen.

George E. Bullwinkel and Henry C. Szesny, both of Keck, Mahin & Cate, of Chicago, for appellee Pioneer Press, Inc.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, R. J. Adreani, H. L. Schwinge and J. W. Bernstein, brought an action for libel and invasion of privacy against defendants, Douglas W. Hansen and Pioneer Press, Inc., an Illinois corporation. The action was for statements contained in a letter to the editor written by Hansen and published in the Northbrook Star by Pioneer Press. The trial court granted defendants' motion to dismiss both counts of the complaint and plaintiffs appeal. (The trial court earlier had granted defendants' motion to dismiss counts III and IV of the complaint which alleged a conspiracy to injure plaintiffs' reputations and to influence certain condemnation proceedings. The order dismissing those counts is not involved in this appeal.)

Plaintiffs are builders and real estate developers. In 1969, plaintiffs were the beneficial owners of property which the Northbrook Park District sought to acquire for a leisure park project. A "disagreement" arose between plaintiffs and the park district concerning the fair market value of the property, and the park district instituted condemnation proceedings in the circuit court of Cook County.

While the condemnation proceedings were pending, the letter written by Hansen appeared in the June 13, 1974, edition of the Northbrook Star, a weekly newspaper owned and published by Pioneer Press. Hansen's letter, together with the headline supplied by Pioneer Press, read as follows:

"Resident hits developer
greed in park hassle

NORTHBROOK—In regards to the Lake Northbrook Leisure Park, it is a disgrace that the village of Northbrook has to go to court to get a few acres of badly needed park land from developers Joseph Bernstein, Herman Schwinge and Raymond Andreani [sic].

I am confident that the park district made a reasonable offer to the developers. It's just that some people show characteristics of pure greed with Bernstein, Schwinge and Andreani no exceptions. It's quite obvious that they'd rather develop all their land commercially for more profits rather than do a civic deed for the community. I'm sure it wouldn't hurt their already rich pocket book to accept the park district's offer.

In fact, I wonder how much money each of those developers earn each year. The way they bargain, they must be quite well off."

Count I of plaintiff's complaint charged that the letter was libelous of the good character and reputation of plaintiffs; that it caused them to suffer great humiliation, mental anguish and loss of esteem in the business community; and that the letter was written with malice. Plaintiffs alleged in count II that the publication invaded their right of privacy.

Pioneer filed a motion to dismiss the complaint claiming that neither count stated a cause of action. Hansen joined in this motion, adding that count I failed to allege "actual malice." On February 9, 1979, the trial court dismissed both counts of the complaint with prejudice.

Plaintiffs initially contend that count I of their complaint states a cause of action for libel per se.

■■ To be libelous per se, a writing must contain a false statement which falls within certain categories of words. Among these categories are false statements which impute the inability to perform or want of integrity in the discharge of the duties of office or employment, and those which prejudice a particular party in his profession or trade. *Bontkowski v. Chicago Sun-Times* (1969), 115 Ill. App. 2d 229, 252 N.E.2d 689.

Plaintiffs urge that several references in the letter fall within these categories of words deemed libelous per se. Among the portions which plaintiffs claim to be objectionable are the headline containing "developer greed," the comments "some people show characteristics of pure greed with Bernstein, Schwinge and Andreani no exceptions," and "it is a disgrace that the village of Northbrook has to go to court to get a few acres of badly needed park land * * *." Plaintiffs maintain that these passages accuse them of greed and disgraceful business practices, thereby damaging their business reputations and tainting future real estate transactions in which they might participate. They further contend that the letter falsely attacks their integrity, honesty, capacity and ability to carry on their professions as real estate developers.

■■ Illinois courts apply the "innocent construction rule" in determining whether writings are libelous. The rule directs that the writing "be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 149.) Under the rule, the headline must be read together with the body of the letter. (*Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 223 N.E.2d 419.) Whether the language is susceptible of an innocent construction is a question of law to be resolved by the court by reading the words stripped of innuendo. *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 361 N.E.2d 74; *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 243 N.E.2d 217.

■■ We find that the language which plaintiffs find offensive in Hansen's letter can be innocently construed. Plaintiffs maintain that the reference to "greed" imputes to them a lack of integrity and an unwillingness to deal fairly. Despite plaintiffs' insistence, the phrase "characteristics of pure greed" does not necessarily connote unfair dealing. The offending language does not charge plaintiffs with being unfit or dishonest in their business dealings with the park district, but rather suggests that they sought to profit financially from the sale of their property. The desire to acquire wealth or to realize a profit from a real estate transaction may be regarded by many persons as indicia of a valid business objective rather than a lack of integrity.

Plaintiffs also object to the use of the term "disgrace." They urge that the letter depicts their actions leading to the condemnation proceedings as "disgraceful," and thus characterizes their conduct as deserving of public dishonor. The precise language upon which plaintiffs base their assertion reads, "it is a disgrace that the village of Northbrook has to go to court * * *." This comment does not indicate that plaintiffs engaged in disgraceful business tactics. Instead, it can be construed to mean that it was unfortunate or a shame that formal condemnation proceedings had to be pursued.

The innocent construction of the words "greed" and "disgrace" is borne out when the letter is read in its entirety. The import of Hansen's letter was that plaintiffs' bargaining position with Northbrook concerning the land acquisition was unfair to the community, and was motivated by a desire for profit rather than to perform a civic deed.

A situation similar to the present case was considered in *Greenbelt Cooperative Publishing Association v. Bresler* (1970), 398 U.S. 6, 26 L. Ed. 2d 6, 90 S. Ct. 1537. There, a prominent real estate developer was involved in negotiations with a city regarding the acquisition of land. A community newspaper reported that some people at a public meeting characterized the developer's proposal as "blackmail." The supreme court held that under these circumstances the word "blackmail" was not libelous as a matter of law. It reasoned that readers would have understood the word to convey criticism of the developer's negotiating proposal rather than to impute commission of a crime. The term "greed" does not appear to be as opprobrious as "blackmail" and therefore does not warrant a different outcome. Defendants' comments, although not complimentary, do not impugn plaintiffs' integrity or ability to engage in their profession. Rather, as in *Greenbelt,* the statements merely criticize the bargaining position taken by plaintiffs in their negotiations with the park district. (See also *Valentine v. North American Co. for Life & Health Insurance* (1974), 60 Ill. 2d 168, 328 N.E.2d 265.) Since language

susceptible of innocent construction must be so read, the trial court properly granted defendants' motion to dismiss count I of plaintiffs' complaint.

Plaintiffs next contend that the trial court erred in dismissing count II of their complaint which alleged an invasion of their right of privacy. They argue that publication by Pioneer Press of Hansen's letter intruded upon their right of privacy because it unreasonably placed them in a false light before the public. (See *Midwest Glass Co. v. Stanford Development Co.* (1975), 34 Ill. App. 3d 130, 339 N.E.2d 274.) Plaintiffs assert that they were thrust into the public eye by the park district's filing of condemnation proceedings; that they were merely protecting their property from wrongful appropriation; and that the publication falsely depicted them as ruthless businessmen who were attempting to secure undue sums of money from the public.

The right of privacy and the right to redress the invasion of such right have been recognized in Illinois. (*Leopold v. Levin* (1970), 45 Ill. 2d 434, 259 N.E.2d 250; *Eick v. Perk Dog Food Co.* (1952), 347 Ill. App. 293, 106 N.E.2d 742.) While the right of privacy enjoys protection of law under some circumstances, this right is a limited one in areas of legitimate public interest. (*Buzinski v. Do-All Co.* (1961), 31 Ill. App. 2d 191, 175 N.E.2d 577; *Eick v. Perk Dog Food Co.*) In *Leopold,* the court observed that in *Time, Inc. v. Hill* (1967), 385 U.S. 374, 17 L. Ed. 2d 456, 87 S. Ct. 534, the supreme court viewed the right of privacy narrowly when balanced against the publication of a matter of public interest. This approach comports with other first amendment holdings designed to insure "uninhibited, robust and wide-open" discussion of legitimate public issues. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 270, 11 L. Ed. 2d 686, 701, 84 S. Ct. 710; see *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997.

■ The park district's attempt to acquire the real estate owned by plaintiffs for a public project was a matter of legitimate public interest and concern. (See *Greenbelt Cooperative Publishing Association v. Bresler* (1970), 398 U.S. 6, 26 L. Ed. 2d 6, 90 S. Ct. 1537.) The negotiations between plaintiffs and the park district as well as the pending condemnation proceedings placed plaintiffs in the midst of the public controversy surrounding the land acquisition. It is not necessary that persons actively seek publicity in order to be found to be in the "public eye." *Beresky v. Teschner* (1978), 64 Ill. App. 3d 848, 381 N.E.2d 979.

In view of the liberty of expression permitted in such areas of legitimate public interest, we conclude that plaintiffs did not have a legally protected right of privacy in matters associated with the condemnation proceedings. We find that the trial court's dismissal of

count II of plaintiff's complaint for failure to state a cause of action was proper.

For the reasons stated, the judgment of the circuit court of Cook County dismissing both counts of plaintiffs' complaint is affirmed.

Judgment affirmed.

SIMON and RIZZI, JJ., concur.