715 P.2d 1243

Gordon D. **RUTLEDGE** and Nancy L. Rutledge, his wife, Plaintiffs-Appellants,

v.

**PHOENIX NEWSPAPERS, INC.,** dba the Arizona Republic, an Arizona corporation; Brent Whiting and Jane Doe Whiting, his wife; and John Does 1 through 5, inclusive, Defendants-Appellees.

No. 1 CA–CIV 7466.

Court of Appeals of Arizona, Division 1, Department A.

March 6, 1986.

Frederick C. Creasy, Jr., Scottsdale, for plaintiffs-appellants.

Gust, Rosenfeld, Divelbess & Henderson by James F. Henderson, and Terrance C. Mead, Phoenix, for defendants-appellees.

## OPINION

GREER, Presiding Judge.

On October 21, 1979, an article authored by appellee Brent Whiting and published by appellee Phoenix Newspapers, Inc. appeared on the front page of the Sunday edition of the Arizona Republic. The article, entitled "Rutledge family has been in 13 lawsuits in 10 years," briefly summarized the Rutledges' litigation history during that time period and was drawn entirely from Maricopa County Superior Court records. At the time the article was published, Kevin Rutledge, son of the appel-

lants, was involved in controversial litigation against former Arizona State University football coach Frank Kush.[1] Appellants' four-count complaint essentially alleges that the article set forth facts taken from the public record in such a way as to inaccurately portray the Rutledge family as "litigation-mongering" individuals. The five theories of relief contained in the complaint include invasion of privacy based on the public disclosure of private facts and false light publication, liability for intended consequences, and the negligent and intentional infliction of emotional distress. The trial court, without discussion, granted summary judgment in favor of the appellees. We affirm.

Arizona recognizes the tort of intentional infliction of emotional distress. *Savage v. Boies*, 77 Ariz. 355, 272 P.2d 349 (1954). Furthermore, this court has, without discussion, stated that the requirements of an intentional infliction of emotional distress claim are applicable to an action for the invasion of privacy based on an allegation that publicity has placed the plaintiff in a false light in the public eye.[2] *Duhammel v. Star*, 133 Ariz. 558, 653 P.2d 15 (App. 1982); *cf., Davis v. First Nat'l Bank*, 124 Ariz. 458, 605 P.2d 37 (App.1979); *Cluff v. Farmers Ins. Exch.*, 10 Ariz.App. 560, 460 P.2d 666 (App.1969) (incorporating the requirements of a claim for intentional infliction of emotional distress into an action for invasion of privacy based on intrusion upon plaintiff's seclusion or solitude).

The type of conduct which must be alleged in order to state a claim for relief for the intentional infliction of emotional distress is described in *Restatement (Second) of Torts* § 46, comment d at 73 (1965):

Liability has been found only where the conduct has been so outrageous in char-

1. *See Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345 (9th Cir.1981), *aff'd, Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

2. Professor Prosser has classified the tort of invasion of the right of privacy into four separate causes of action which he classifies as follows:

    1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;

    2. Public disclosure of embarrassing private facts about the plaintiff;

    3. Publicity which places the plaintiff in a false light in the public eye;

    4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

Prosser, *Privacy*, 48 Calif.L.Rev. 383, 389 (1960); *see also, Restatement (Second) of Torts*, § 652A (1977).

acter, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

As "society's conscience," it is the duty of the court in the first instance to determine whether the acts complained of can be considered extreme and outrageous so as to state a claim for relief. *Duhammel; Cluff; Davis; Restatement (Second) of Torts* § 46, comment h at 77 (1965).

■ It is our opinion that the publication of true facts taken from the public record regarding the litigation history of the immediate family of one who is embroiled in an extremely controversial lawsuit of widespread public interest does not begin to approach the type of extreme and outrageous conduct contemplated by this standard. Were we to hold otherwise, a large number of truthful and factual statements published in the newspapers of this state could give rise to a claim alleging invasion of privacy and intentional infliction of emotional distress. *Cf. Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328, 349–50 (1975) (holding "the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection").

■ We have not previously considered the question of whether the requirements of intentional infliction of emotional distress should be extended to an action for invasion of privacy based on publicity given to private life. We conclude that such an extension is appropriate. This court first incorporated the requirements of the mental distress tort into an action for invasion of privacy based on intrusion of one's solitude or seclusion in *Cluff v. Farmers Ins. Exch.,* 10 Ariz.App. 560, 460 P.2d 666 (App. 1969). We incorporated the safeguards of the tort into that particular invasion of privacy theory because the gist of the wrong redressed by that theory "is clearly the intentional infliction of mental distress." 10 Ariz.App. at 564, 460 P.2d at 670 *quoting* Prosser, *Privacy,* 48 Calif.L. Rev. 383, 422 (1960). The requirements, in other words, were incorporated into the intrusion theory of privacy to prevent that theory from being used as a means by which to circumvent the stringent standards necessary to otherwise establish a claim for the intentional infliction of emotional distress.

Claims for invasion of privacy based on either public disclosure of private life or publicity placing one in a false light in the public eye, however, lend themselves to a slightly different analysis. These theories, based upon publicity, are said to "concern the interest of reputation, and move into the field of defamation" Prosser, *supra,* at 422, and are not exclusively concerned with the harm resulting from emotional distress.

While these privacy theories and defamation may provide somewhat overlapping protection against the invasion of one's reputational interest,[3] we think it is

---

**3.** We must note at this point that whether our own supreme court would agree with Prosser's analysis is uncertain at best. In *Reed v. Real Detective Pub. Co.,* 63 Ariz. 294, 162 P.2d 133 (1945) our supreme court adopted the invasion of privacy theory set forth in former *Restatement of Torts* § 867 (1939). In holding that the unauthorized publication and circulation of a photograph stated a cause of action which survived the death of the publisher, the court took pains to distinguish a claim for invasion of privacy from a defamation action:

The gravamen of the action here charged is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication.... Unlike libel and slander, the gist of the cause is not injury to the character or reputation which appertains to the standing of a person in the eyes of others and are attributes in law separate from the person.

. . . . .

Since, under the law, recovery may be had for an invasion of the right of privacy for injured feelings alone, the wrongs redressed must be considered as a direct rather than an indirect injury and one that is wholly personal in character, not depending on any effect which the publication may have on the standing of the individual in the community.

**558**

important to recognize that the underlying objective of all four of the generally recognized invasion of privacy theories is to provide protection from "interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others," *Restatement (Second) of Torts* § 652A, comment b at 377 (1977), and to allow recovery for the mental distress occasioned by the interference. *See Restatement* § 652H. For this reason, we believe the requirements of intentional infliction of emotional distress, properly incorporated into an action for the invasion of privacy based on false light in *Duhammel,* should also be required elements of a claim for invasion of privacy based on publicity given to private life. We therefore find that appellants' failure to state a cause of action for the intentional infliction of emotional distress is fatal to each of their privacy claims as well.

 Count III of the appellants' complaint sets forth the claim of liability for intended consequences. *See Restatement (Second) of Torts* § 870 (1977). The principle has not been adopted in Arizona and even in those jurisdictions where it is recognized, it is inapplicable "where plaintiff can have adequate redress by any of the forms of action known and practiced." 14 C.J.S. *Case* § 2 at 4 (1939). *See, e.g., Cartwright v. Golub Corp.,* 51 A.D.2d 407, 381 N.Y.S.2d 901 (1976) (holding that where the specific acts alleged are defamatory, the only remedy lies in the traditional tort of defamation). A review of appellants' multi-count complaint shows appellants had adequate redress in other forms of action.

Finally, we note that Count IV of appellants' complaint fails to plead the physical injury necessary to state a claim for the negligent infliction of emotional distress. *Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668 (1979).

63 Ariz. at 305–06, 162 P.2d at 139. It is, to say the least, unclear to what extent the principles set forth in *Reed* are applicable in light of the subsequent development of invasion of privacy law and the rules set forth in *Restatement (Second) of Torts* § 652A *et seq.* (1977). Indeed, two opinions of this court have suggested that *Reed*

The order granting summary judgment for appellees is affirmed.

MEYERSON and SHELLEY, JJ., concur.

is to be considered as authority for the recognition of only that theory of invasion of privacy which is based on the appropriation of another's name or likeness. *See Duhammel v. Star,* 133 Ariz. 558, 653 P.2d 15 (App.1982); *Davis v. First Nat'l Bank,* 124 Ariz. 458, 605 P.2d 37 (App. 1979).