757 P.2d 105

Dwight R. ROWLAND and William F. Weither and Helen Weither, husband and wife; Melvin R. Colwell and Mary Colwell, husband and wife, Plaintiffs/Appellants,

v.

UNION HILLS COUNTRY CLUB, an Arizona corporation, and Jack D. Collins, Defendants/Appellees.

No. 2 CA–CV 87–0280.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 11, 1988.

Review Denied July 12, 1988.

302

Greengard & Finley, P.A. by Patricia J. Finley, R. Austin Goodale, and Michael Da-Silva, Phoenix, for plaintiffs/appellants.

Jennings, Strouss & Salmon by Jefferson L. Lankford, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from an order granting summary judgment in the defendants' favor on all counts and denying plaintiffs' cross-motion for summary judgment on a breach of contract claim. We affirm the denial on the plaintiffs' cross-motion and the granting of summary judgment for the defendants on the counts for intentional and negligent infliction of emotional distress, "outrage," and "false light" invasion of privacy. We reverse the summary judgment granted in defendants' favor on the breach of contract, defamation and conspiracy claims.

At the time of the events in question, defendant Collins was president of the board of directors of defendant Union Hills

Country Club. The plaintiffs were members of the country club. The plaintiffs were expelled on February 26, 1986, for "conduct unbecoming a member." It is this expulsion and the defendants' alleged motivation for it on which the plaintiffs base their claims. Because there are issues of fact unresolved as to the breach of contract, defamation and conspiracy claims, we reverse.

Union Hills Country Club (UHCC or Club) is an Arizona corporation with approximately 900 shareholder-members. Its by-laws provide for selection of a board of directors by member vote, a process for amending the by-laws and a nominating procedure for candidates for the board of directors. The plaintiffs contend that the "conduct unbecoming a member" on which their expulsion was based was their attempt, undertaken in accordance with the by-laws, to elect a new board of directors and, ultimately, to amend the by-laws to permit governance by the general membership rather than by a board of directors. In effect, the plaintiffs contend that no specific conduct other than this supports the charges against them and that this conduct alone, which is authorized by the by-laws, cannot be characterized as "conduct unbecoming a member."

"In reviewing a grant of summary judgment, evidence must be viewed in the light most favorable to the losing party, with that party being given benefit of all favorable inferences that may be reasonably drawn from the evidence." *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979). The appellate court will not weigh the evidence. *Id.*

The facts are as follows. The plaintiffs, members of UHCC, formed a lobbying organization, The Independent Members Electorate (TIME). TIME representatives began lobbying the general membership in an effort to amend the by-laws. The proposed amendments were intended ultimately to permit replacement of the board of directors. A meeting between the board of directors and TIME representatives was held on February 11, 1986. Defendant Collins reported by letter to the general membership that the meeting revealed no disagreement on major issues. However, on February 20, Collins, as president of the board, sent letters to the plaintiffs advising them to appear on February 25 for an "opportunity to be heard" on charges of "violation of UHCC by-laws and unbecoming conduct as a member as required by Article IV, Section 4." The letter informed the plaintiffs that the board would be acting on the charges whether the plaintiffs appeared or not.

The charges against the plaintiffs were set forth in an attachment to the letter which provided:

"You are called before this Special Meeting of the Board of Directors under the provisions of Article III, Section 1, par. f and Article IV, Section 4 of the By–Laws of U.H.C.C.

1. You have fostered an alienating and contemptuous attitude toward the Board of Directors which 'creates problems for the members of the Club.'

2. You have helped develop and distribute both orally and in writing a program of misinformation which 'creates problems for the members of the Club'.

3. Unsupported accusations have caused untold wasted time and effort on the part of Board members and employees. This type of harassment has made the work of our Board more difficult than necessary. It has also made it increasingly difficult to obtain qualified candidates for the Board which is 'conduct unbecoming a member in his or her relation with other members'.

4. You have refused to meet your membership responsibility of making your complaints in writing as required by Art. XIV, Sec. 3, which is in violation of our By–Laws.

Through these and other actions and behavior, you have been able to foment and foster an attitude of suspicion and mistrust toward the Board. This has been detrimental to the patronage of the Club and has cost the Club some candidates

for membership. This is a threat to the financial health of our Corporation."

Plaintiff Rowland appeared at his appointed time, 8:30 a.m. on February 25. After reading his own letter to the board, in which he asked for a "Bill of Particulars," he stated that he was unable to identify the acts or words that formed the basis for the charges. He brought to the board letters from other TIME members similarly charged, who felt it futile to appear, which also requested a "Bill of Particulars." Collins, in reply, asked Rowland whether he had anything more to say. Rowland replied that he did not and was excused. Before the meeting adjourned at 9:45 a.m., the board voted to expel Rowland. The other plaintiffs were expelled as the time set for their hearing passed and they did not appear.

## EMOTIONAL DISTRESS, "OUTRAGE" AND INVASION OF PRIVACY CLAIMS

■ We affirm the summary judgment order on the counts alleging intentional and negligent infliction of emotional distress, "false light" invasion of privacy and for a claim in tort for "outrage." At the outset, we agree with the defendants that no separate tort of "outrage" exists in Arizona. Plaintiffs point to *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.,* 149 Ariz. 76, 716 P.2d 1013 (1986), as support for recognition of an independent cause of action, "a tort of outrage." *Id.* at 80, 716 P.2d at 1017. A complete reading, however, clearly shows that the court in that case was referring to a showing of outrageous circumstances or conduct as an element of the tort intentional infliction of emotional distress. Outrageous conduct by itself is not a tort.

■ Tort claims for intentional infliction of emotional distress and "false light" invasion of privacy require proof of outrageous conduct. *Lucchesi,* supra; *Rutledge v. Phoenix Newspapers, Inc.,* 148 Ariz. 555, 715 P.2d 1243 (App.1986). The Oregon appellate court, in its discussion of a tort of "outrageous conduct," evaluated that conduct in the context of the infliction of severe emotional distress and required

that the conduct exceed " 'any reasonable limit of social toleration.' " *Humphers v. First Interstate Bank,* 68 Or.App. 573, 576, 684 P.2d 581, 584 (1984), rev. in part on other grounds, 298 Or. 706, 696 P.2d 527 (1985), citing *Hall v. The May Dept. Stores,* 292 Or. 131, 637 P.2d 126 (1981). The conduct complained of in this case, even if proven at trial to be true, is not so far outside the bounds of decency as to cause a reasonable person, upon hearing of it, to shout, "Outrageous!" *Ford v. Revlon, Inc.,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). This essential element lacking, we affirm the granting of summary judgment on these counts.

■ Damages for unintended or negligent infliction of emotional distress are recoverable in Arizona. *Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668 (1979). However, the emotional distress inflicted "must be manifested as a physical injury." *Id.* at 115, 593 P.2d at 594. Furthermore, "[t]he plaintiff/bystander must himself have been in the zone of danger so that the negligent defendant created an unreasonable risk of bodily harm to him." *Id.* at 116, 593 P.2d at 595. As a matter of law, the plaintiffs' allegations, even if true, are insufficient to support a claim for negligent infliction of emotional distress. Expulsion from a country club, as it occurred in this case, even if done maliciously and without legitimate basis, cannot be considered sufficient to create an unreasonable risk of bodily harm to the plaintiff. Summary judgment on the negligent infliction of emotional distress count is affirmed.

## BREACH OF CONTRACT

■ The rights of members of a private organization are governed by the articles of incorporation and by-laws, which constitute a contract between the members and the organization, and among the members themselves. *Savoca Masonry Co. Inc. v. Homes & Son Const. Co. Inc.,* 112 Ariz. 392, 542 P.2d 817 (1975); see also *Bartley v. Augusta Country Club, Inc.,* 166 Ga. App. 1, 303 S.E.2d 129 (1983); *Orchard Ridge Country Club, Inc. v. Schrey,* 470 N.E.2d 780 (Ind.App.1984); *Kendrick v.*

*Watermill Beach Club, Inc.,* 8 Misc.2d 798, 165 N.Y.S.2d 1009 (1957). Although defendants concede this, they argue that because the relationship is "social" in nature, judicial scrutiny does not extend to substantive claims of breach and is limited to determining whether the organization followed its own procedures in expelling a member. Defendants rely on this court's decision, in *Aspell v. American Contract Bridge League of Memphis, Tennessee,* 122 Ariz. 399, 595 P.2d 191 (App.1979), where we stated:

> "Courts have not yet been willing to extend legal protection from ostracism ... or provide compensation for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' ... The decision to exclude a person from one's social activities should be one of the more remote objects of judicial scrutiny. The fact that the parties voluntarily agree to associate with each other should not create for the courts the obligation to adjudicate such injuries, or impose liability beyond that which was within the range of contemplation of the contracting parties." 122 Ariz. at 403, 595 P.2d at 195 (citations omitted).

We note, however, that the cause of action in *Aspell* was not for breach of contract, but rather in tort. In affirming a directed verdict for the defendants, we merely refused to find that the law imposed a duty on the relationship created by the parties' contract which existed apart from that contract.

■ We do not agree with defendants' characterization of the scope of our review. While it is generally true that courts will not become involved in the internal disputes of a social organization resulting in the suspension or expulsion of its members, redress may be had where it is established that the action taken violated the organization's by-laws or was in bad faith, fundamentally unfair, fraudulent or utterly unsupported by any evidence. See, e.g., *Werber v. Imperial Golf Club, Inc.,* 413 So.2d 41 (Fla.App.1982); *Bartley v. Augusta Country Club, Inc.,* supra; *Bernstein v. The Players,* 120 Misc.2d 998, 466 N.Y.S.

2d 897 (1983). *Aspell* is not to the contrary.

■ In the present case, defendants' motion for summary judgment alleged that all of the procedural requirements of the by-laws pertaining to expulsion of members had been complied with and that there was therefore no basis for relief. The essence of the plaintiffs' response and cross-motion was that defendants' had failed to comply with the procedural requirements of the by-laws and, further, that the real basis for their expulsion was their attempt to elect a new board of directors and to amend the by-laws in a manner authorized by the by-laws themselves. Lengthy and detailed statements of fact, with supporting affidavits, were filed in the trial court by both sides in support of their divergent positions. Detailing those positions would unnecessarily lengthen this opinion. Suffice it to say that disputed issues of fact exist as to the procedures required by the by-laws for expulsion of members, the procedures followed in this case, and whether the actions of the defendants were taken in bad faith or were fundamentally unfair. The trial court therefore erred in granting summary judgment as to the breach of contract claim.

■ Defendants also argue that the breach of contract claim was properly dismissed as against defendant Collins because he, as president, cannot be held personally liable for the corporation's breach of its contract with the plaintiffs, and because the record shows that he did not participate in the actual vote to expel the plaintiffs. This argument ignores the fact that, as noted above, a contract exists not only between individual members and the club, but also among the individual members themselves. Thus, Collins' liability, if any, is based on his actions as a member of the club and does not arise merely out of status as president of the defendant corporation. The fact that he did not actually participate in the expulsion vote does not, in and of itself, relieve him of liability if his conduct during the entire course of events constituted a breach of his duty as a mem-

ber, under the contract, to other members of the club.

## DEFAMATION CLAIM

The plaintiffs have also alleged a claim for defamation. The Restatement (Second) of Torts § 580(B) (1977) reads:

"One who publishes a false and defamatory communication concerning a *private* person ... is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." (Emphasis added)

There are affidavits in the record from persons having knowledge of the plaintiffs' expulsion from the club and the alleged charges on which the expulsions were based. By whom and by what method this information was disseminated to the persons giving affidavits is disputed. If the only conduct for which the plaintiffs were expelled is determined to have been conduct properly protected by the by-laws, the allegation of "conduct unbecoming a member" may be found false and without qualified privilege. Qualified privilege "must be exercised in a reasonable manner and for a proper purpose." Prosser and Keeton on Torts, § 115 at 832 (5th ed. 1984). Qualified privilege is also lost upon a showing of malice. Malice may be proved by showing that "the publication is not made primarily for the purpose of furthering the interest which is entitled to protection." Id. There is evidence in the record that other members of the country club were told after the plaintiffs' expulsion by board members that under no circumstances were the plaintiffs to be permitted back in the country club, not even as guests of club members. These are disputed facts that preclude summary judgment; the plaintiffs are entitled to a trial on the defamation claim.

## CONSPIRACY CLAIM

The plaintiffs have alleged a claim for civil conspiracy. For a civil conspiracy to occur two or more persons must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages. *Savard v. Selby*, 19 Ariz.App. 514, 508 P.2d 773 (1973); *Uvodich v. Arizona Board of Regents*, 9 Ariz.App. 400, 453 P.2d 229 (1969). "A corporation cannot conspire with itself anymore than a private individual can," nor with its directors if they are acting in the corporation's behalf. *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir.1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); 15A C.J.S. Conspiracy § 2 (1967). However, the plaintiffs allege that defendant Collins was acting on his own behalf. This allegation triggers the exception to the general rule that a corporation cannot conspire with its officers. "[W]hen officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir.1981). Furthermore, not all members of a conspiracy need be named defendants for one member to be found liable. We find no authority requiring that co-conspirators be joined. The defendants correctly assert that conspiracy is a derivative tort. *May v. Santa Fe Trail Transportation Co.*, 189 Kan. 419, 370 P.2d 390 (1962). If proven, the tort of defamation provides the basis from which the conspiracy claim may be made.

The order denying plaintiffs' cross-motion for summary judgment on the breach of contract claim is affirmed. The order granting the defendants' motion for summary judgment on the claims of intentional and negligent infliction of emotional distress, "outrage," and "false light" invasion of privacy is affirmed. The order granting the defendants' motion for summary judgment on the breach of contract, defamation and conspiracy claims is reversed.

LACAGNINA, C.J., and
HATHAWAY, J., concur.