783 P.2d 781

Richard G. GODBEHERE; David Carter; Robert W. Malone; Jerome Ellison; Salvatore A. Dicciccio; Jerry White; David Hendershott; Steve Werner; Richard Rosky; Patricia Mann; Brian Carnahan; Thomas Shorts; Roy Reyer; Gary Godbehere; Ray Jones; Larry Wendt; Gary Freund; Cliff Anderson; James F. Porter; Paul B. Thornton; Phillip A. Babb; Ralph Pendergast; Kirby D. Moore; Kirk L. Meisner; Clark W. Chapman; Patrick C. Cooper; Robert D. Roepke; Michael R. Mitchell; Samuel M. Grimes; Dennis G. Dowell; Mark Battilana; and David Toporek, Plaintiffs/Appellants,

v.

PHOENIX NEWSPAPERS, INC.; Randy Collier; Darrow Tully; Richard Robertson; Tom Fitzpatrick; Pat Flannery; Tony Natale; Pat Murphy; Susan Leonard; Phil Sunkel; Alan Moyer; Lynne Holt; Jay Brashear; John Kolbe; and Victor Dricks, Defendants/Appellees.

No. CV–87–0379–PR.

Supreme Court of Arizona.

Oct. 26, 1989.

Reconsideration Denied Dec. 19, 1989.

Witwer, Burlage, Poltrock & Giampietro by Wayne B. Giampietro, Chicago, Ill., and Marton & Hall, P.A. by Kraig J. Marton, Phoenix, for plaintiffs/appellants.

Gust, Rosenfeld & Henderson by James F. Henderson, Terrance C. Mead, Phoenix, for defendants/appellees.

Opinion of the Court of Appeals, Division One, 155 Ariz. 389, 746 P.2d 1319 (Ct.App. 1987) vacated.

FELDMAN, Vice Chief Justice.

Richard G. Godbehere, a former Maricopa County Sheriff, and several deputies and civilian employees of the sheriff's office (plaintiffs) brought this action against Phoenix Newspapers, Inc., the publisher of *The Arizona Republic* and *Phoenix Gazette*, and fourteen editors and reporters of the two newspapers (publishers), for libel and false light invasion of privacy. The trial court granted publishers' motion to dismiss for failure to state a claim as to the invasion of privacy claims, but refused to dismiss the other counts of the complaint. Plaintiffs appealed and the court of appeals affirmed. We granted review to determine whether Arizona should recognize a cause of action for false light invasion of privacy, and if so, what the proper standard should be. *See* Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS

In the spring and summer of 1985, publishers printed over fifty articles, editorials, and columns (the publications) about plaintiffs' various law enforcement activities. The publications stated that the plaintiffs engaged in illegal activities, staged narcotics arrests to generate publicity, illegally arrested citizens, misused public funds and resources, committed police brutality, and generally were incompetent at law enforcement. Plaintiffs alleged in their eighteen-count complaint that the publications were false, damaged their reputations, harmed them in their profession, and caused them emotional distress.

Publishers moved to dismiss all eighteen counts of the complaint for failure to state a claim, and the court dismissed the false light invasion of privacy claims. In so doing, the trial court relied on *Rutledge v. Phoenix Newspapers, Inc.*, 148 Ariz. 555, 715 P.2d 1243 (Ct.App.1986), which held that a plaintiff must prove the elements of intentional infliction of emotional distress to claim false light invasion of privacy. The trial court found the acts in question were not so extreme or outrageous as to

constitute the tort of intentional infliction of emotional distress. Minute Entry (filed June 18, 1986).

On appeal, plaintiffs argued that Arizona should follow the Restatement (Second) of Torts § 652E (1977) (hereafter Restatement), which provides in part:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

The court of appeals rejected the Restatement position as inconsistent with its own prior authority. *Godbehere v. Phoenix Newspapers, Inc.*, 155 Ariz. 389, 391, 746 P.2d 1319, 1321 (Ct.App.1987) (citing *Rutledge; Duhammel v. Star*, 133 Ariz. 558, 653 P.2d 15 (Ct.App.1982); *Cluff v. Farmers Insurance Exchange*, 10 Ariz.App. 560, 460 P.2d 666 (1969)).

We accepted plaintiffs' petition for review to decide whether Arizona should follow Restatement § 652E, recognizing the tort of false light invasion of privacy without requiring plaintiffs to prove all the elements of the tort of intentional infliction of emotional distress.

## DISCUSSION

### A. Development of the Right of Privacy

In 1890, Samuel Warren and Louis Brandeis published an article advocating the recognition of a right to privacy as an independent legal concept. Warren & Brandeis, *The Right to Privacy*, 4 HARV. L.REV. 193 (1890). Explaining how courts traditionally recognized claims involving injury to a person's private thoughts or feelings, they also described how courts used contract and property law to protect thoughts, ideas, or expressions from wrongful appropriation. *Id.* Warren and Brandeis contended these were nothing more than "instances and applications of a general right to privacy." *Id.* at 198. Hence, they supported recognition of the right "to be let alone." *Id.* at 203.

In 1905 the Georgia Supreme Court recognized the privacy right in a case involving wrongful appropriation of the plaintiff's name and likeness. *Pavesich v. New England Life Insurance Co.*, 50 S.E. 68 (Ga.1905). Controversy over recognition of a right to privacy continued, although the Restatement of Torts recognized an independent cause of action for interference with privacy in 1939. Restatement (First) of Torts § 867 (1939). A majority of jurisdictions eventually recognized the right in some form. PROSSER AND KEETON ON THE LAW OF TORTS § 117, at 850-51 (5th ed. 1984) (hereafter PROSSER & KEETON).

In 1960, Dean Prosser concluded that four separate torts had developed under the right of privacy rubric: (1) intrusion on the plaintiff's seclusion or private affairs; (2) public disclosure of embarrassing private facts; (3) publicity placing the plaintiff in a false light in the public eye; and (4) appropriation of the plaintiff's name or likeness for the defendant's advantage. Prosser, *Privacy*, 48 CALIF.L.REV. 383 (1960). In 1977, the Restatement adopted Prosser's classification. *See* Restatement § 652A-I (1977). Although each tort is classified under invasion of privacy, they "otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'" PROSSER & KEETON § 117, at 851.

### B. Privacy in Arizona

Arizona first recognized an action for invasion of privacy in *Reed v. Real Detective Publishing Co.*, 63 Ariz. 294, 162 P.2d 133 (1945). *Reed* involved the unauthorized publication of the plaintiff's photograph. Subsequently, our court of appeals recognized the Restatement's four-part classification of the tort. *See Rutledge*, 148 Ariz. at 556, 715 P.2d at 1244; *Cluff*, 10 Ariz.App. at 563, 460 P.2d at 669.

Although most jurisdictions that recognize a cause of action for invasion of privacy have adopted the Restatement standard of "highly offensive to a reasonable person" or a similar standard, *see* Note, *Is Invasion of Privacy a Viable Cause of Action in Arizona?: Rethinking the Standard*, 30 ARIZ.L.REV. 319, 331 n. 96 (1988), Arizona courts of appeals' decisions have imposed a stricter standard. Rather than following the Restatement, these decisions have held that where the damage alleged is emotional, the plaintiff must prove the elements of the tort of intentional infliction of emotional distress in addition to proving invasion of privacy. To recover for invasion of privacy, a plaintiff must show that the defendant's conduct was "extreme and outrageous." [1] No other state requires a plaintiff to prove that the defendant committed "outrage" in a false light action. *See* Annotation, *False Light Invasion of Privacy–Cognizability and Elements*, 57 A.L.R.4th 22 (1987); Note, *supra*, 30 ARIZ.L.REV. at 338.

Publishers urge this court to adopt the court of appeals' view. They argue that there is no need for an independent tort of false light invasion of privacy because the action overlaps two other recognized torts: defamation and intentional infliction of emotional distress. These, publishers contend, cover the field and permit recovery in meritorious cases, thus making the false light action an unnecessary burden on the media's first amendment rights. To consider this argument, we must examine the distinctions between the false light action and the torts of intentional infliction of emotional distress and defamation.

C. False Light Invasion of Privacy and Intentional Infliction of Emotional Distress

Arizona has turned to Restatement § 46 to define intentional infliction of emotional distress, also known as the tort of outrage. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). This section provides:

(1) one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The element of "extreme and outrageous conduct" requires that plaintiff prove defendant's conduct exceeded "all bounds usually tolerated by decent society ... and [caused] mental distress of a very serious kind." PROSSER & KEETON § 12, at 60. This standard distinguishes "true claims from false ones, and ... the trifling insult or annoyance from the serious wrong." Prosser, *Mental Suffering*, 37 MICH.L.REV. 874, 877 (1939); *see also* Restatement § 46 comments b, d, and f.

The court of appeals has advanced two main reasons to justify imposing the intentional infliction standard on privacy actions. First, because the basis of the wrong in both outrage and invasion of privacy is infliction of mental suffering, the two torts are substantively similar and the same standard should apply to both. *Cluff*, 10 Ariz.App. at 564, 460 P.2d at 670; *see also Davis v. First National Bank of Arizona*, 124 Ariz. 458, 462–63, 605 P.2d 37, 41–42 (Ct.App.1979). Second, the court suggested that the rule was necessary to prevent plaintiffs from circumventing the "stringent standards necessary to otherwise establish a claim for the intentional infliction of emotional distress." *Rutledge*, 148 Ariz. at 557, 715 P.2d at 1245. This stricter standard was necessary "to protect defendants from unwarranted lawsuits." *Duhammel*, 133 Ariz. at 561, 653 P.2d at 18.

---

1. Arizona cases applying the intentional infliction "extreme and outrageous conduct" standard to invasion of privacy claims include: *Godbehere v. Phoenix Newspapers*, 155 Ariz. 389, 746 P.2d 1319 (Ct.App.1987) (false light); *Hirsch v. Cooper*, 153 Ariz. 454, 737 P.2d 1092 (Ct.App.1986) (false light); *Rutledge v. Phoenix Newspapers, Inc.*, 148 Ariz. 555, 715 P.2d 1243 (Ct.App.1986) (private facts, false light); *Creamer v.*

*Raffety*, 145 Ariz. 34, 699 P.2d 908 (Ct.App.1985) (intrusion); *Valencia v. Duval Corp.*, 132 Ariz. 348, 645 P.2d 1262 (Ct.App.1982) (intrusion); *Duhammel v. Star*, 133 Ariz. 558, 653 P.2d 15 (Ct.App.1982) (false light); *Davis v. First National Bank of Arizona*, 124 Ariz. 458, 605 P.2d 37 (Ct.App.1979) (intrusion); *Cluff v. Farmer's Insurance Exchange*, 10 Ariz.App. 560, 460 P.2d 666 (1969) (intrusion).

Here, as in the above cases, the trial court dismissed plaintiffs' privacy claims for failure to state a cause of action, relying on *Rutledge* and holding that the acts of which plaintiffs complained were not outrageous. Minute Entry (filed June 18, 1986). Assuming the court was correct on the evidence, we must determine whether it correctly required plaintiffs to prove the tort of outrage in a privacy action.

■ Publishers emphasize that actions for both intentional infliction of emotional distress and invasion of privacy provide compensation for emotional distress or damage to sensibility. *Cf.* Restatement §§ 46 and 652E. Thus, the injury from both torts is similar. Although this may be true, the fact that two different actions address the same injury is no reason to refuse to recognize torts that protect against different wrongful conduct. For example, three victims may suffer broken legs in the following ways: (1) a defendant negligently drives a car into the first victim's car; (2) a defendant's defective product injures the second victim; and (3) a defendant, without justification, attacks the third. Each victim would have a different tort claim: negligence, strict liability, and battery. The fact that each victim suffers the same type of injury does not preclude recognizing separate tort actions. Each tort theory developed separately to deter and provide redress against a different type of wrongful conduct.

■ Thus, the fact that outrage and invasion of privacy both provide redress for emotional injury does not persuade us that the actions are "merged" or that plaintiffs should be required to prove the former in an action for the latter. The outrage tort protects against conduct so extreme that it would induce "an average member of the community ... to exclaim, 'outrageous!'" Restatement § 46 comment d. False light invasion of privacy, however, protects against the conduct of knowingly or recklessly publishing false information or innuendo that a "reasonable person" would find "highly offensive." Although false publication may constitute outrageous conduct and vice versa, it is also true that the same

wrongful conduct will not always satisfy the elements of both tort actions. *See* Note, *supra*, 30 ARIZ.L.REV. at 342. Because each action protects against a different type of tortious conduct, each has its place, and the common injury should not abrogate the action. *See id.*

■ Nor do we believe that recognizing the false light action without requiring plaintiffs to prove outrage will circumvent the "stringent standards" of the emotional distress tort. *See Rutledge*, 148 Ariz. at 557, 715 P.2d at 1245. The standards for proving false light invasion of privacy are quite "stringent" by themselves. For example, the plaintiff in a false light case must prove that the defendant published with knowledge of the falsity or reckless disregard for the truth. *See* Restatement § 652E. This standard is as stringent as the intentional infliction of emotional distress requirement that the plaintiff prove the defendant "intentionally or recklessly caused" the emotional distress. *See* Restatement § 46.

■ We also do not share the court of appeals' concern with creating unwarranted lawsuits. Freeing a plaintiff from the need to prove outrageous conduct in a privacy suit does not require us to provide a remedy for "every trivial indignity." *See* Prosser, *supra*, 37 MICH.L.REV. at 877. A defendant is not liable in a false light case unless the publication places the plaintiff in a false light highly offensive to a reasonable person. *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); Restatement § 652E. Thus, the plaintiff's subjective threshold of sensibility is not the measure, and "trivial indignities" are not actionable.

■ We conclude, therefore, that the two torts exist to redress different types of wrongful conduct. Situations exist where a jury could find the defendant's publication of false information or innuendo was not outrageous but did satisfy the false light elements. *See* Zimmerman, *False Light Invasion of Privacy: The Light That Failed*, 64 N.Y.U.L.REV. 364 (1989). Thus, we believe the tort action for false

light invasion of privacy provides protection against a narrow class of wrongful conduct that falls short of "outrage," but nevertheless should be deterred.

## D. Invasion of Privacy and Defamation

A second argument advanced by publishers is that little distinction exists between a tort action for false light invasion of privacy and one for defamation. Thus, because defamation actions are available, they argue, Arizona need not recognize false light invasion of privacy. Again, we disagree.

▆▆▆▆ Although both defamation and false light invasion of privacy involve publication, the nature of the interests protected by each action differs substantially. *See* PROSSER & KEETON § 117, at 864. A defamation action compensates *damage to reputation* or good name caused by the publication of false information. *Hill*, 385 U.S. at 384 n. 9, 87 S.Ct. at 540 n. 9; *Reed.* To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation. *See Phoenix Newspapers, Inc. v. Choisser*, 82 Ariz. 271, 312 P.2d 150 (1957).

Privacy, on the other hand, does not protect reputation but protects mental and emotional interests. Indeed, "[t]he gravamen of [a privacy] action ... is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication." *Reed*, 63 Ariz. at 305, 162 P.2d at 139. The remedy is available "to protect a person's interest in being let alone and is available when there has been publicity of a kind that is highly offensive." PROS-

SER & KEETON § 117, at 864. Under this theory, a plaintiff may recover even in the absence of reputational damage, as long as the publicity is unreasonably offensive and attributes false characteristics. However, to qualify as a false light invasion of privacy, the publication must involve "a major misrepresentation of [the plaintiff's] character, history, activities or beliefs," not merely minor or unimportant inaccuracies. Restatement § 652E comment c.

▆▆▆▆ Another distinction between defamation and false light invasion of privacy is the role played by truth. To be defamatory, a publication must be false, and truth is a defense. PROSSER & KEETON § 116, at 839. A false light cause of action may arise when something untrue has been published about an individual, *see* PROSSER & KEETON § 117, at 863–66, *or* when the publication of true information creates a false implication about the individual. In the latter type of case, the false innuendo created by the highly offensive presentation of a true fact constitutes the injury.[2] *See* Restatement § 652E.

Thus, although defamation and false light often overlap, they serve very different objectives. The two tort actions deter different conduct and redress different wrongs. A plaintiff may bring a false light invasion of privacy action even though the publication is not defamatory, and even though the actual facts stated are true. Several examples in comment b to Restatement § 652E also illustrate the practical differences between a false light action and defamation and demonstrate how, in a cer-

---

**2.** A good example of a false light cause of action based on implication is *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128 (7th Cir.1985), cert. denied, 475 U.S. 1094, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986). In *Douglass*, the plaintiff posed nude, consenting to the publication of her photographs in *Playboy* magazine. Her photographer subsequently left the employ of *Playboy* for *Hustler* magazine, a publication of much lower standing in the journalistic community. He sold her photographs to *Hustler*, which published them. The plaintiff sued for the nonconsensual use of the photographs. Plaintiff had no cause of action for defamation, because essentially, there was nothing untrue about the photo-

graphs. She posed for them and, as published, they did not misrepresent her. She also had no claim for outrage. She voluntarily posed for the photographs and consented to their publication in *Playboy*. Publication was not "outrageous," as it may have been if she were photographed without her knowledge and the photos published without her initial consent. However, the court upheld her recovery for false light invasion of privacy. The jury may have focused on the differences between *Playboy* and *Hustler* and concluded that to be published in *Hustler*, as if she had posed for that publication, falsely placed her in a different light than the *Playboy* publication. 769 F.2d at 1138.

tain class of cases, the false light action is the only redress available.[3] It is these considerations, we believe, that lead the vast majority of other jurisdictions, including the United States Supreme Court, to recognize the distinction between defamation and false light.[4]

### E. Arizona and the False Light Tort

■ Momentarily leaving aside the free speech considerations, we are persuaded to recognize the distinct tort of false light invasion of privacy as articulated by Restatement § 652E.[5] The argument that recognition of this action invites much new litigation is of questionable merit. To date, only four cases of false light privacy have been presented in Arizona, including the instant case. States recognizing the false light action have not been deluged with substantially more litigation than afflicts this state. In most cases, the false light theory will add little if anything beyond the relief a defamation or emotional distress claim will provide. Some cases exist, however, where the theory will protect a small area otherwise lacking protection against invasion of privacy. That interest, we believe, demands protection.

Arizona is one of the first states whose founders thought it necessary to adopt explicit protection for the privacy of its citizens. *See* Ariz. Const. art. 2, § 8. Unless the interest in protecting privacy rights is outweighed by the interest in protecting speech, *see Mountain States Telephone & Telegraph Co. v. Arizona Corporation Commission,* 160 Ariz. 350, 773 P.2d 455 (1989), we see no reason not to recognize an action for false light invasion of privacy.

### F. Free Speech Considerations

■ As in defamation, a public official in a false light action must always show that the defendant published with knowledge of the false innuendo or with reckless disregard of the truth. *See* Restatement § 652E comment b. Any doubt about the application of the actual malice element of the false light tort to public figures has been eliminated. In *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), the Supreme Court held that a public figure plaintiff must prove *Times v. Sullivan* actual malice in order to recover for intentional infliction of emotional distress. Although *Hustler* was an intentional infliction case, the language used by the Court is so broad that it applies

---

**3.** Restatement § 652E comment b gives the following illustrations:

> 3. A is a renowned poet. B publishes in his magazine a spurious inferior poem, signed with A's name. Regardless of whether the poem is so bad as to subject B to liability for libel, B is subject to liability to A for invasion of privacy. [This example is presumably based on the case from which the false light concept arose—*Lord Byron v. Johnston,* 2 Mer. 29, 35 Eng.Rep. 851 (1816).]
>
> 4. A is a Democrat. B induces him to sign a petition nominating C for office. A discovers that C is a Republican and demands that B remove his name from the petition. B refuses to do so and continues public circulation of the petition, bearing A's name. B is subject to liability to A for invasion of privacy.
>
> 5. A is a war hero, distinguished for bravery in a famous battle. B makes and exhibits a motion picture concerning A's life, in which he inserts a detailed narrative of a fictitious private life attributed to A, including a non-existent romance with a girl. B knows this matter to be false. Although A is not defamed by the motion picture, B is subject to liability to him for invasion of privacy.

Illustrations 3, 4, and 5.

**4.** *Hill,* 385 U.S. at 384 n. 9, 87 S.Ct. at 540 n. 9; *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Rinsley v. Brandt,* 700 F.2d 1304 (10th Cir.1983); *Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 590 S.W.2d 840 (1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980); *Selleck v. Globe International, Inc.,* 166 Cal.App.3d 1123, 212 Cal.Rptr. 838 (1985); *Goodrich v. Waterbury Republican–American, Inc.,* 188 Conn. 107, 448 A.2d 1317 (1982); *Anderson v. Low Rent Housing Commission,* 304 N.W.2d 239 (Iowa 1981); *Froelich v. Adair,* 213 Kan. 357, 516 P.2d 993 (1973); *McCall v. Courier–Journal and Louisville Times Co.,* 623 S.W.2d 882 (Ky.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982); *McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737 (Okl.1980); *see also* Annot., *supra,* 57 A.L.R.4th 22, §§ 7–12.

**5.** Insofar as there is contrary language in *Rutledge, Duhammel,* and other Arizona false light cases, we disapprove the decisions.

to any tort action relating to free speech, particularly "in the area of public debate about public figures." *See Hustler*, 485 U.S. at 53, 108 S.Ct. at 881.[6] Additional protection for free speech comes from the principle that protection for privacy interests generally applies only to private matters. *See* Restatement § 652A comment b; *Reed*, 63 Ariz. at 304, 162 P.2d at 138.

### G. Is False Light Available in This Case?

Finally, publishers contended that even if we recognize false light actions, the action does not lie in this case. They argue that not only do the publications discuss matters of public interest, but plaintiffs have no right of privacy with respect to the manner in which they perform their official duties. We agree.

 We have specifically held that the right of privacy does not exist "where the plaintiff has become a public character...." *Reed*, 63 Ariz. at 304, 162 P.2d at 138. In addition, privacy rights are absent or limited "in connection with the life of a person in whom the public has a rightful interest, [or] where the information would be of public benefit." *Reed*, 63 Ariz. at 304, 162 P.2d at 138; *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 490, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328 (1975) (relying on *Hill*, 385 U.S. at 388, 87 S.Ct. at 542); *Reardon v. News–Journal Co.*, 53 Del. 29, 164 A.2d 263, 267 (1960); *Meyer v. Ledford*, 170 Ga.App. 245, 316 S.E.2d 804 (1984); *Adreani v. Hansen*, 80 Ill.App.3d 726, 36 Ill.Dec. 259, 400 N.E.2d 679 (1980).

A number of jurisdictions take the position that because false light is a form of invasion of privacy, it must relate only to the private affairs of the plaintiff and cannot involve matters of public interest. *See* Annot., *supra*, 57 A.L.R.4th 22, § 10. It is difficult to conceive of an area of greater public interest than law enforcement. Certainly the public has a legitimate interest in the manner in which law enforcement officers perform their duties. Therefore, we hold that there can be no false light invasion of privacy action for matters involving official acts or duties of public officers.

Consequently, we adopt the following legal standard: a plaintiff cannot sue for false light invasion of privacy if he or she is a public official *and* the publication relates to performance of his or her public life or duties. We do not go so far as to say, however, that a public official has no privacy rights at all and may never bring an action for invasion of privacy. Certainly, if the publication presents the public official's private life in a false light, he or she can sue under the false light tort, although actual malice must be shown.

 The Supreme Court has held that "the public official designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966). Police and other law enforcement personnel are almost always classified as public officials. *See, e.g., Time, Inc. v. Pape*, 401 U.S. 279, 291–92, 91 S.Ct. 633, 640–41, 28 L.Ed.2d 45 (1971) (deputy chief of detectives); *St. Amant v. Thompson*, 390 U.S. 727, 730, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) (deputy sheriff); *Henry v. Collins*, 380 U.S. 356, 357, 85 S.Ct. 992, 993, 13 L.Ed.2d 892 (1965) (per curiam) (city police chief and county attorney); *Gray v. Udevitz*, 656 F.2d 588 (10th Cir.1981) (ex-patrolman); *Meiners v. Moriarity*, 563 F.2d 343, 352 (7th Cir.1977) (federal DEA agent); *Rosales v. City of Eloy*, 122 Ariz. 134, 135, 593 P.2d 688, 689 (1979) (police sergeant); *Roche v. Egan*, 433 A.2d 757, 762 (Me.1981) (all law en-

---

**6.** To this point, we have spoken of false light as requiring that the plaintiff show actual malice. Restatement § 652E seems to state that requirement, but the Caveat to section 652E states that the Institute "takes no position" on whether, under some circumstances, a non-public figure may recover for false light invasion of privacy where he does not show actual malice but does show negligent publication. *See also* Restatement § 652E comment on Clause (b). Because this case does not present the issue, we also take no position on the validity of a false light action for negligent publication. Suffice it to say that in this case, where we deal with publications concerning public officers performing public duties, the first amendment controls.

forcement personnel). The sheriff and the deputies here are public officials.[7] The publications at issue concern the discharge of their public duties and do not relate to private affairs. Therefore, plaintiffs have no claim for false light invasion of privacy.

We affirm the trial court's dismissal of the false light claim. Because we disagree with the court of appeals' reasoning, we vacate that opinion and remand to the trial court for further proceedings consistent with this opinion.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., retired before the decision of this case.

CORCORAN, J., did not participate in the determination of this case.

---

7. In fact, in paragraph 11 of count 2 of the complaint, plaintiffs style themselves as "duly elected and/or appointed and acting law enforcement officials of the County of Maricopa, Arizona...."