[Civil No. 3098. Filed February 23, 1932.]

[8 Pac. (2d) 245.]

In the Matter of the Disbarment of RALPH W. LANGWORTHY, an Attorney of This Court.

Mr. K. Berry Peterson, Attorney General, and Mr. Renz L. Jennings, Assistant Attorney General, for the State.

Mr. George O. Hilzinger, for Respondent.

ROSS, J.—The Attorney General, upon the recommendation of a Grievance Committee of the Arizona Bar Association, on May 9, 1931, filed in this court disbarment proceedings against the respondent Ralph W. Langworthy. The respondent answered the accusation by a general denial.

Rose S. Silver, a member of the Arizona Bar located in Tucson, was appointed to take the testimony. That was done on June 23, 1931, at the courthouse in Tucson, both parties being represented. We now have before us the proceedings at such hearing, also briefs filed by both parties.

The proceeding was initiated before the bar association by two of respondent's clients. J. A. Carson, a resident of Tucson, complained of respondent's failure to pay over to him the receipts of a judgment collected by him; and G. B. Williams, a resident of Geneva, New York, complained of his failure to do and perform legal services he had been employed and paid to do and perform and to account for certain funds entrusted to him.

The facts about the Carson matter seem to be as follows: Carson employed respondent to collect of one Alex McKay a promissory note. He brought suit against McKay, and on December 31, 1929, recovered a judgment for $384.45, which was paid him in full on February 19, 1930. In March he and Carson had a settlement by the terms of which he retained out of the $384.45 collected the sum of $49.45 as his fee and expenses in connection with the lawsuit against McKay. At the time he gave Carson his check for $100, which was paid, leaving a balance of $235 due Carson. This sum he had expended to meet pressing claims against himself, he explained to Carson, and was not able to pay Carson due to his disappointment in collecting a fee of $500 a client had promised him. Upon the insistence of Carson, he

gave him his check dated April 1st for the $235 balance, which was not paid for want of funds. Carson, after trying many times to get the money from respondent, took the matter to the county attorney of Pima county, and when respondent learned of this he made claim that he did not owe Carson $235 but only $110. Then it was he said that at the time he gave his check for $235 Carson owed him a fee of $125 for legal services in another matter and that he had absentmindedly given his check for $235 instead of $110. At the hearing, Mr. James Barry, an attorney of Tucson, corroborated, in a way, respondent's statement that he was Carson's attorney in another case some time prior to 1929. Carson denied that he had employed respondent and the record of the case it seems corroborates him.

It is highly improbable respondent would have given a check for $235 when he owed only $110 and on a bank wherein he had no funds to meet a check of either amount. When, at the request of the local judge of the superior court, a member of the bar interviewed respondent, he admitted owing Carson $110. He made the same admission to another attorney engaged by Carson to collect his claim, but beyond such admissions he has done nothing.

It appears from the evidence that Williams was the owner of a mining claim located in Santa Cruz county which he wanted patented. In June of 1926 he employed respondent to look after the legal work in connection therewith. At or about the same time he employed Paul E. Fernald to survey the same, preparatory to applying for a patent, and paid him $100 therefor. In June, Williams sent $400 and in July $100 to respondent, as we understand, to pay him for his labor in procuring patent and the expenses in connection therewith, including the purchase price of the ground. Fernald made the survey in due course,

and also did, or caused to be done $100 worth of annual work on the mine for 1926. He also did, or caused to be done, the representation work on the mine for the years 1927, 1928 and 1929 and was paid therefor by Williams. Formal application for patent was filed by respondent in the United States Land Office, in Phoenix, on June 5, 1929, just about three years after his employment. This application on the day of its filing was rejected for the following reasons: (1) It was not published in a paper on the register's approved list; (2) it was not filed in duplicate as required by the Land Office; (3) there was only one copy of showing under Circular 1128, which is required to be in duplicate; (4) the publisher's notice of application failed to show adjoining claims, and insufficient copies were filed; (5) abstract of title bore date of June 9, 1926, and was not "reasonably near" the date of application; and (6) failure to supply applicant's full name.

The delays in prosecuting application for patent and the careless and inefficient manner in which it was handled caused Williams to discharge respondent and to employ Honorable John B. Wright, of Tucson, to do the necessary legal work to obtain a patent to the mining claim.

At or about the same time, Williams placed with Richey & Richey, a firm of lawyers in Tucson, a claim for $500 against respondent for collection. Respondent at the hearing itemized the expenses he had been put to in prosecuting the application for patent and, as we figure them, they amount to $68. He said his agreed fee was to be $100. If it be conceded that he earned the agreed fee, and that he should be allowed what he says he expended, he has $332 belonging to Williams. Respondent has not paid this or offered to pay it or any other sum to Williams. He admits owing balances to both Carson and Williams. In both cases his plea is in the nature of a confession

and avoidance. The avoidance, however, is very weak. We should like to think he is right and honest, but the facts and circumstances will not permit us to do so. We think his claim in the Carson case is an afterthought, and if it be granted that the delays that occurred in prosecuting the application for patent were the result of the action or inaction of others, as respondent would have us believe, still as an honest, conscientious man it seems to us he would have hastened when he was discharged by Williams to return the money entrusted to him, with the exception of his fee of $100 and expenses. If he had offered to Carson and Williams what he admits he owes them, it would have given his defense a much more substantial and sincere appearance. He not only refused to take letters from the postoffice sent him by Williams, but also refused and failed to answer letters from Williams' attorney concerning the amount he owed Williams.

Lawyers should be honest for the sake of honesty itself. If they cannot be honest for that reason, they should be honest out of respect for the honor and good name of their profession. They should remember that every crooked act of a member is, to the ordinary person, a black mark against the whole profession. Treatment of clients by lawyers such as in the Carson and Williams cases is not only dishonest, but is calculated to do the profession great harm in the public mind. We think what respondent did exhibits a lack of common honesty and therefore an unfitness to practice law.

Another accusation preferred by the president of the Bar Association is that respondent wilfully advised one of his clients to disobey a lawful order of the superior court of Pinal county. It appears that for such misconduct he was cited by that court and punished by fine and imprisonment for contempt. While his disrespect for the court's orders should be

severely condemned, we think he was sufficiently punished therefor and if that act stood alone the proceeding would fail. However, for his unethical and dishonest conduct in the Carson and Williams cases, it is the judgment of the court that he should be, and he hereby is, disbarred from practicing law in this state, and his name is ordered stricken from the roll of attorneys of this court.

McALISTER, C. J., and LOCKWOOD, J., concur.