No. 3--01--0939

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

ADAN RAMOS and MARY RAMOS, ) Appeal from the Circuit Court

Plaintiffs-Appellants, ) for the 13th Judicial Circuit,

 ) LaSalle County, Illinois

) 

v. ) No. 00L61

)

THE CITY OF PERU, ) Honorable 

Defendant-Appellee ) Eugene P. Daugherity

) Judge Presiding

(Illinois Valley Crime )

Stoppers, )

Respondent in Discovery).)

_________________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

In 1989, the Illinois legislature enacted the Illinois Uniform Conviction Information Act (Act) (20 ILCS 2635/1 
et
 
seq.
 (West 2000)).  It declared that conviction information maintained by the Illinois Department of State Police (the Department) would be made available to the public. 20 ILCS 2635/2(A) (West 2000)
.  The purpose of the Act is to establish a uniform policy for access and dissemination of conviction information, set guidelines that would support effective law enforcement, ensure the accuracy of conviction information, and provide individuals with a form of redress for grievances if inaccurate or incomplete information was disseminated about them. 20 ILCS 2635/2(B) (West 2000).

Plaintiffs Adan and Mary Ramos filed an action against the City of Peru pursuant to the Act.  
In May of 1996, Adan had been arrested by the Peru police department on domestic battery charges.  While he was being processed for that arrest, a photograph was taken of him.  On July 20, 1999, a Crime Stoppers' advertisement appeared in the LaSalle News-Tribune.  The advertisement named Ricardo N. Ramos as a person wanted for the offense of aggravated criminal sexual abuse.  Directly above the name of Ricardo N. Ramos was the photograph of Adan Ramos.

The Ramoses filed a complaint against the city, asserting a violation of the Act (20 ILCS 2635/1 
et
 
seq.
 (West 2000)), defamation, and false light invasion of privacy
.  A separate personal injury claim for Mary was included in the complaint.

The trial court dismissed the Uniform Conviction Information Act claim pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2000)).  It found that the purpose of the Act was to create liability for information that is disseminated from the Department of State Police's central repository only and not for information released from the files of local police departments.  Because the Ramoses failed to allege that the photograph of Adan was disseminated from the files of the Department, the court dismissed the claim.

The defamation, false light, and personal injury claims were dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2000)).  The court determined that section 2-107 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-107 (West 2000)) barred all three claims and that there was no legal basis for Mary's personal injury claim because the publication was not directed at her.

In this appeal we are asked to determine whether the trial court properly dismissed the Ramoses' claims.  This 
court applies a 
de
 
novo
 standard when reviewing a lower court’s dismissal of claims pursuant to sections 2-615 and 2-619 of the Code. 
Provenzale v. Forister
, 318 Ill. App. 3d 869, 743 N.E.2d 676 (2001).

A. Conviction Information Act

The Ramoses contend that the trial court erred when it determined that the Uniform Conviction Information Act did not apply to information released from the files of local police departments.  The city 
disputes this contention and responds that section 23(C) of the Act (20 ILCS 2635/23(C) (West 2000)) specifically exempts the Ramoses' claim.  In the alternative, the city argues that if this court determines that the Act applies to the files of local police departments, the trial court's decision should be affirmed because (1) the Ramoses failed to properly allege a violation of the Act and (2) the photograph of Adan did not constitute "conviction information" as defined by the Act. 

When interpreting a statute, the court's primary objective is to ascertain and give effect to the intent of the legislature.  When determining legislative intent, the court must construe the language of the statute according to its plain and ordinary meaning. 
In re C.M.
, 282 Ill. App. 3d 990, 669 N.E.2d 707 (1996).  If the statutory language is clear and unambiguous, the statute's plain meaning will be given effect. 
People v. Whitney
, 
188 Ill. 2d 91, 720 N.E.2d 225 (1999).

Section 14 of the Act is entitled "Judicial Remedies" and states in relevant part:

"(B) An individual aggrieved by a violation of this Act by a State Agency 
or
 
unit
 
of
 
local
 
government
 shall have the right to pursue a civil action for damages or other appropriate legal or equitable remedy ***.

(C) Any civil action for damages alleging the negligent dissemination of inaccurate or incomplete conviction information by a State agency 
or
 
by
 
a
 
unit
 
of
 
local
 
government
 in violation of this Act may only be brought against the State agency 
or
 
unit
 
of
 
local
 
government
 and shall not be brought against any employee or official thereof." (Emphasis added.) 20 ILCS 2635/14 (West 2000).

In our view, this language is unambiguous.  The Act clearly contemplates that aggrieved individuals may pursue judicial remedies against state agencies and units of local governments such as the City of Peru.  It applies to conviction information
(footnote: 1) that is reported to or collected, maintained, or disseminated by the Department.
(footnote: 2) 20 ILCS 2635/4 (West 2000)).  Thus, conviction information that is reported to the Department by units of local government is included.  See 20 ILCS 2635/5 (West 2000).  The photograph in this case falls under the definition of conviction information; therefore, it is included under the Act.  Any other interpretation of the language of section 14 would not conform with the Act's purpose to ensure the accuracy and completeness of conviction information and provide individuals with redress of grievances in the event that inaccurate or incomplete information is disseminated about them. 20 ILCS 2635/2(B) (West 2000).

The city responds that the Ramoses' claim is exempt pursuant to section 23(C) of the Act (20 ILCS 2635/23(C) (West 2000)) and that the legislature never intended that the local files of criminal justice agencies be subject to the Act's provisions.
  We do not agree.  Section 23(C) states: 

"Nothing in this Act shall be construed as restricting or prohibiting the dissemination of criminal history record information
(footnote: 3) to a requesting criminal justice agency or peace officer or the dissemination of local criminal history record information maintained by criminal justice agencies on behalf of units of local government to members of the general public requesting such information."  20 ILCS 2635/23(C) (West 2000).

While the language of section 23(C) allows for the dissemination of criminal history record information to the public, the language does not provide that units of local government will not be held accountable for damages resulting from the negligent dissemination of inaccurate or incomplete criminal history record information.  To find otherwise would go against the Act's mandate that individuals be afforded the maximum feasible protection to their rights of privacy and enjoyment of their good name and reputation.  See 20 ILCS 2635/23(A) (West 2000). 

Although the city claims that the trial court's decision should be affirmed because the Ramoses did not properly allege a violation of the Act and failed to specifically identify which part of the Act was violated, we disagree.  Based on our review of the complaint, we find that the Ramoses have sufficiently alleged a cause of action for violation of the Act.  We further disagree with the city's claim that the photo of Adan did not constitute "conviction information" as defined by the Act.  As stated previously, conviction information includes "all prior and subsequent criminal history 
events directly relating to such judgments, such as, 
but
 
not
 
limited
 
to
"
 
the notation of arrest and charges filed, the sentence and fine imposed, and all related probation, parole and release information.
  (Emphasis added.)
 20 ILCS 2635/3(F) (West 2000).
  The words "but not limited to" reflect a broad definition of conviction information that would certainly include the photograph in this case.

Because the Ramoses have properly stated a cause of action pursuant to the Uniform Conviction Information Act, we reverse the trial court's decision.

B. Tort Immunity Act

The Ramoses assert that the trial court erred when it dismissed their defamation, false light, and personal injury claims based on section 2-107 of the Tort Immunity Act (745 ILCS 10/2-107 (West 2000)).  Section 2-107 of the Act provides that a local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of oral or written information. 745 ILCS 10/2-107 (West 2000).
  The Ramoses claim that section 2-107 applies only to discretionary acts and not to ministerial ones.  
Because the act of turning over the photograph to Crime Stoppers was ministerial and not discretionary, the Act did not bar their claims
.  

When construing the Tort Immunity Act, the primary goal is to ascertain and give effect to the intention of the legislature.  
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 692 N.E.2d 1177 (1998).
  
Exceptions, limitations, or conditions that conflict with the express legislative intent shall not be read into the Act. 
Harinek
, 181 Ill. 2d at 340, 692 N.E.2d at 1180.   

A plain reading of section 2-107 confirms that the trial court did not err when it determined that the Ramoses' defamation, false light invasion of privacy, and personal injury claims were barred by the Tort Immunity Act.  Although the discretionary/ministerial distinction still exists under several provisions of the Act, the distinction applies only to those sections of the Act in which the distinction is explicit.  See 745 ILCS 10/2-109, 2-201 (West 2000); 
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 687 N.E.2d 1042 (1997); 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 680 N.E.2d 265 (1997).
  Because there is no explicit language in section 2-107 that provides that the government will not be immune for ministerial acts, the discretionary/ministerial distinction does not apply.  Therefore, we affirm the decision of the trial court dismissing these claims.

C. Personal Injury Claim

The Ramoses contend that the trial court improperly dismissed Mary's personal injury claim on the basis that there is no recognizable cause of action for a third-party based on the defamation of another.  They assert that Mary's claim was for her own injuries that occurred when she was subjected to needless comments and questions from others regarding the photograph.  Those comments, according to the Ramoses, caused Mary grief, humiliation and embarrassment.  The Ramoses suggest that this action is akin to a loss of consortium claim.  

We do not agree with the Ramoses' contention.  A
 cause of action for injuries resulting from a defamation accrues only to the person against whom the injurious publication was directed. 
Insull v. New York World-Telegram Corp.
, 172 F. Supp. 615 (N.D. Ill. 1959).  
Although Mary is seeking separate damages for her own injuries under the guise of her own personal injury claim, the underlying basis of liability is still the alleged defamation by the city based upon the improper dissemination and publication of her husband's photo.  Moreover, the Ramoses offer no legal support for their position that Mary is entitled to recover for her own injuries due to a defamation directed toward her husband or for their contention that this case should be treated like a loss of consortium claim.  

In sum, we hold that the Act covers local units of government and their dissemination of materials that are defined as conviction information under the Act.  Accordingly, 
we reverse the trial court's 
decision dismissing the Uniform Conviction Information Act claim and affirm on the remaining issues.

For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

LYTTON, P.J., and SLATER, J., concur.

FOOTNOTES
1: 
"Conviction information" is defined as data reflecting a judgment of guilt or 
nolo
 
contendere
 and includes all prior and subsequent criminal history events directly relating to such judgments, such as, but not limited to: (1) the notation of arrest; (2) the notation of charges filed; (3) the sentence imposed; (4) the fine imposed; and (5) all related probation, parole, and release information. 20 ILCS 2635/3(F) (West 2000). 

2: 
"The Department" refers to the Illinois Department of State Police. 20 ILCS 2635/3(I) (West 2000).

3: 
"Criminal history record information" is defined as the "data identifiable to an individual and consisting of description or notations of arrests, detentions, indictments, informations, pretrial proceedings, trials, or other formal events in the criminal justice system or descriptions or notations of criminal charges (including criminal violations of local municipal ordinances) and the nature of any disposition arising therefrom, including sentencing, court or correctional supervision, rehabilitation and release." 20 ILCS 2635/3(G) (West 2000).