120 P.3d 697 (2005)
211 Ariz. 269
Rodney J. FILLMORE, Plaintiff/Appellant,
v.
MARICOPA WATER PROCESSING SYSTEMS, INC., an Arizona corporation d/b/a Kinetico Quality Water Systems; and John Owen, individually, Defendants/Appellees.
No. 1 CA-CV 04-0523.
Court of Appeals of Arizona, Division 1, Department D.
September 19, 2005.
*700 Rodney J. Fillmore, St. David, Appellant In Propria Persona.
The Dergo Law Group, P.L.L.C. by Ivan Kolesik, Scottsdale, Attorneys for Defendants/Appellees.

OPINION
EHRLICH, Judge.
¶ 1 In his complaint, Rodney Fillmore sought damages due to allegations made by business competitors regarding his employer's product and practices. The superior court dismissed the complaint for want of a viable claim. See Ariz. R. Civ. P. 12(b)(6). Because Fillmore sufficiently alleged colorable theories of injurious falsehood, tortious business interference and defamation, we reverse the judgment and remand for further proceedings.

BACKGROUND[1]
¶ 2 Fillmore is an independent contractor for ASK/H20 Technologies & Consulting, Inc., a distributor of whole-house water-treatment systems, including the "H2O Concepts System." John Owen is employed by Maricopa Water Processing Systems, a competitor that sells Kinetico Quality Water Systems (collectively "Kinetico").
¶ 3 On January 3, 2003, Fillmore made a sales presentation to David and Angie Schmitt at their home. Immediately thereafter, Owen visited the Schmitts to promote Kinetico's system. The Schmitts told Owen of Fillmore's proposal.
¶ 4 In both his initial and amended complaints, Fillmore alleged that, after learning that the Schmitts had spoken with Fillmore, Owen made several pejorative statements regarding the quality of ASK/H20's water-treatment system and its business practices. Fillmore specifically asserted that Owen had told the Schmitts that:
1. the ASK/H2O technology is "bogus, a fraud and does not work";
2. the certification of the ASK/H2O technology represented to exist by Fillmore is "a fraud";
3. the H20 Concepts water-filtration unit is "nothing but a large carbon filter";
4. "The people at H20 Technologies & Consulting are out and out crooks and rip people off";
5. ASK/H20 Technologies & Consulting "had been kicked out of the local [B]etter [B]usiness [B]ureau because of its `shady' business practices and in fact is not currently a member"; and

*701 6. ASK/H20 Technologies & Consulting "kept changing its name whenever the authorities were about to catch up with them and reveal the fraud of their systems."
¶ 5 Fillmore contended that Owen either knew that the alleged statements were false or recklessly disregarded the need to determine their truth. Fillmore also asserted that Owen had made these statements in order to derail Fillmore's negotiations with the Schmitts. In that regard, Fillmore claimed that, before hearing Owen's presentation, the Schmitts either had been "considering purchasing" or "had pretty much made up their minds to buy" a water system from Fillmore but "could not" do so after speaking with Owen, at least not until the allegations had been "cleared up." Fillmore requested injunctive relief as well as compensatory and punitive damages against Kinetico.
¶ 6 In response, Kinetico filed a Rule 12(b)(6) motion, asserting that Fillmore lacked standing to assert claims on behalf of ASK/H20. It also argued that Fillmore's claims were "derivative" of allegations against ASK/H20, and, therefore, that Fillmore had no basis for personal relief.
¶ 7 Before the superior court ruled on the motion, Fillmore amended his complaint. See, e.g., Graham v. Goodyear Aerospace Corp., 120 Ariz. 275, 276, 585 P.2d 884, 885 (App.1978) ("prior to the filing of any answer by the defendant[s] ... and prior to any ruling by the trial court on the pending motion to dismiss, [plaintiff] could amend his complaint as a matter of right . . ."). He made minor changes to the factual allegations, but he added two sections labeled "Cause[s] of Action." In the first of these sections, Fillmore claimed that Kinetico had "disparag[ed][his] product" and "interfer[ed] with [his] business expectations ... with the Schmitts...." See, e.g., Aldabbagh v. Ariz. Dep't of Liquor Licenses & Control, 162 Ariz. 415, 421, 783 P.2d 1207, 1213 (App.1989) ("injurious falsehood is the publication of matter derogatory to the plaintiff's business ... calculated to prevent others from dealing with him"); Wagenseller v. Scottsdale Mem'l Hosp., 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985) (recognizing tort of improper interference with "valid contractual relationship or business expectancy"). In the second section, he asserted that Owen's fourth alleged statement, i.e., the "crooks/rip-off" statement, constituted "defamation and slander per se." Godbehere v. Phoenix Newspapers, Inc., 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989) ("A defamation action compensates damage to reputation or good name caused by the publication of false information.") (citing Time, Inc. v. Hill, 385 U.S. 374, 384 n. 9, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967)).
¶ 8 The superior court dismissed Fillmore's complaint, concluding that he had failed to state a viable claim for relief, and it awarded Kinetico its attorneys' fees, noting that Fillmore had filed similar complaints against other competitors, all of which had been dismissed. Fillmore timely appealed.

ANALYSIS
¶ 9 Dismissing a complaint for its failure to state a viable claim is "not favored under Arizona law," Maldonado, 129 Ariz. at 167, 629 P.2d at 1003, and this court will reverse such a dismissal unless we are "certain that the plaintiff would not be entitled to relief under any state of facts susceptible of proof under the claim stated." Sun World Corp. v. Pennysaver, Inc., 130 Ariz. 585, 586, 637 P.2d 1088, 1089 (App.1981). Thus,
the question is whether enough is stated ... [to] entitle the plaintiff to relief [through] some theory to be developed at trial. The purpose of the rule is to avoid technicalities and give the other party notice of the basis for the claim and its general nature.
Guerrero v. Copper Queen Hosp., 112 Ariz. 104, 106-07, 537 P.2d 1329, 1331-32 (1975).
¶ 10 Kinetico urges this court to afford greater deference to the dismissal, claiming that actions for libel and slander are "traditionally disfavored." See Andrews v. Stallings, 119 N.M. 478, 892 P.2d 611, 624 (App.1995) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 359 (2d ed.1990)). Even if Andrews did not differ significantly from this *702 case,[2] we would not follow New Mexico's example. In addition to Arizona's strong constitutional protections of the right to bring common-law tort claims and to receive full compensation for any damages, see Cronin v. Sheldon, 195 Ariz. 531, 538-41 ¶¶ 33-51, 991 P.2d 231, 238-41 (1999) (discussing "anti-abrogation" clause, Art. XVIII, § 6, and "non-limitation" clause, Art. II, § 31); Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 9, 17, 730 P.2d 186, 194 (1986) (holding that Article XVIII, § 6 "protects the right to recover damages for injury to reputation"), we are bound by this pronouncement from the Arizona Supreme Court:
One's reputation is a significant, intensely personal possession that the law strives to protect. The entire common law of defamation attests to the importance we attach to an individual's right to seek compensation for damage to his reputation. Not even the critical need for open and robust public debate on issues of public concern is sufficient to completely shield malicious defamations.
Chamberlain v. Mathis, 151 Ariz. 551, 555, 729 P.2d 905, 909 (1986) (citations omitted).
¶ 11 We also reject the contention that Fillmore lacks standing to bring this action. Citing In re Gosnell Development Corp. of Arizona, 221 B.R. 776 (D.Ariz.1998), the superior court concluded that Fillmore lacked standing to bring an action on behalf of ASK/H20. Not only does the Arizona Constitution lack the "case and controversy" requirement of the United States Constitution at issue in Gosnell, an Arizona court is not bound by a federal bankruptcy decision on this point of law.[3] To have standing to sue in an Arizona court, a plaintiff need only
"plead damage from an injury peculiar to him or at least more substantial than that suffered" by the community at large. Allegations of general economic or aesthetic losses in an area, without instances of injury particular to the plaintiff, are generally not sufficient to create standing.
Blanchard v. Show Low Planning & Zoning Comm'n, 196 Ariz. 114, 118, ¶ 20, 993 P.2d 1078, 1082 (App.1999) (quoting Buckelew v. Town of Parker, 188 Ariz. 446, 452, 937 P.2d 368, 374 (App.1996)).
¶ 12 Fillmore is clearly seeking recovery for his own losses. He identified his commission from the potential sale to the Schmitts and his "humiliation" as recoverable damages. See Boswell, 152 Ariz. at 17, 730 P.2d at 194 (anti-abrogation clause protects recovery of damages for emotional injury for defamation). Thus, none of the authority that Kinetico cites regarding the standing needed to assert a corporate claim for relief supports the dismissal of Fillmore's complaint, and the superior court's cited authority on standing is inapposite.[4]
¶ 13 Fillmore attempted to identify three legal theories for recovery: injurious falsehood, tortious business interference and defamation. These theories provide relief for distinct types of damages and do not permit "double recovery" as suggested by Kinetico. See Restatement (Second) of Torts *703 ("Restatement") § 623A, cmt. g. Rather, when a plaintiff's action is based on several alleged fraudulent misrepresentations, as in this case, the plaintiff may have a viable claim for relief under each of the three theories:
In some circumstances one who is liable to another for intentional interference with economic relations by inducing a third person by fraudulent misrepresentation not to do business with the other may also be liable under other rules of the law of torts. Thus if the representation is also defamatory of the other, the actor may be liable under the rules relating to defamation. Or, if the representation disparages the other's goods, the actor may be liable under the rules relating to injurious falsehood.
Id. at § 767, cmt. c.
¶ 14 We therefore review whether Fillmore would be entitled to relief under any of the circumstances that he has alleged. Sun World Corp., 130 Ariz. at 586, 637 P.2d at 1089. In so doing, we independently determine whether his allegations describe valid legal theories. See Johnson v. Mohave County, 206 Ariz. 330, 332 ¶ 7, 78 P.3d 1051, 1053 (App.2003).

A. Fillmore's Claim for Injurious Falsehood
¶ 15 Throughout his pleadings, Fillmore refers to one cause of action by various names, including "trade libel" and "product disparagement." Both of these terms describe the tort that is most often referred to as "injurious falsehood." See, e.g., Rodney A. Smolla, 2 Law of Defamation § 11:34, at 11-44 ("In the modern law the tort of `injurious falsehood' is the general umbrella term for a collection of torts such as ... `product disparagement' or `trade libel'...."). See also Gee v. Pima County, 126 Ariz. 116, 116, 612 P.2d 1079, 1079 (App.1980) ("[T]rade libel ... involves the intentional publication of an injurious falsehood disparaging the quality of another's property with resulting pecuniary loss."). A plaintiff states a valid cause of action for "injurious falsehood" by alleging that the defendant made a statement or statements:
1. to a third party, i.e., "published";
2. knowing that the statement or statements were false;
3. in an effort to persuade the third party from dealing with the plaintiff; and
4. that resulted in a pecuniary loss to the plaintiff.
See, e.g., W. Techs., Inc. v. Sverdrup & Parcel, Inc., 154 Ariz. 1, 4, 739 P.2d 1318, 1321 (App.1986) (citing W. Prosser and W. Keeton, The Law of Torts § 128, at 963 (5th ed.1984), and Restatement § 623A).
¶ 16 Fillmore's allegations present a colorable theory of injurious falsehood. Fillmore claimed that Owen had "published" statements regarding ASK/H20's product and practices to the Schmitts and that Owen had done so either knowing that these statements were false or recklessly disregarding the need to determine their truth. Fillmore also asserted that Owen had made those statements in a specific effort to interfere with Fillmore's potential economic relationship with the Schmitts. Finally, Fillmore's claimed spoiled sale of an ASK/H20 system to the Schmitts stated a specific, measurable pecuniary loss. These allegations express a valid claim for injurious falsehood.
¶ 17 The theories of injurious falsehood and defamation tend to overlap "particularly in cases of disparagement of the plaintiff's business or product." See Restatement § 623A, cmt. g. Thus, Owen's statements regarding ASK/H20's product and practices could satisfy some requirements of both theories. Relying on Richey v. Western Pacific Development Corp., 140 Ariz. 597, 684 P.2d 169 (App.1984), Kinetico asserts that, in actions for slander of title, the only person with standing is the owner of the property. Although the theories of injurious falsehood and slander of title are somewhat related, see W. Techs., 154 Ariz. at 6, 739 P.2d at 1323, the court in Richey addressed a dispute regarding the lis pendens attachment of real property, see 140 Ariz. at 598-600, 684 P.2d at 170-72, in which case the only person with standing for damages likely would be the property owner. By contrast, Arizona permits an action for injurious falsehood based on a derogatory statement regarding "the *704 plaintiff's business." Aldabbagh, 162 Ariz. at 421, 783 P.2d at 1213. We therefore conclude that Fillmore's complaint states a valid cause of action for injurious falsehood and remand this matter for further proceedings on this cause of action.

B. Fillmore's Claim for Tortious Business Interference
¶ 18 Both Arizona law and the Restatement recognize that an action for damages may be based on an interference with a mere but valid expectation of a business relationship. See, e.g., Hadley v. Southwest Props., Inc., 116 Ariz. 503, 506, 570 P.2d 190, 193 (1977); Bar J Bar Cattle Co. v. Pace, 158 Ariz. 481, 486, 763 P.2d 545, 550 (App.1988) (citing Restatement § 766B, cmt. c). The elements of the tort of "intentional interference with a business relationship" or expectancy have been stated as:
1. "[t]he existence of a valid contractual relationship or business expectancy";
2. knowledge of the relationship or expectancy on the part of the interfering party;
3. an intentional interference inducing or causing a breach or termination of the relationship or expectancy;
4. "resultant damage to the party whose relationship or expectancy has been disrupted"; and
5. an improper "motive or means" in the interference.
See, e.g., Miller v. Servicemaster by Rees, 174 Ariz. 518, 521, 851 P.2d 143, 146 (App.1992) (following Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa County, 130 Ariz. 523, 529-30, 637 P.2d 733, 739-40 (1981), and Wagenseller, 147 Ariz. at 388, 710 P.2d at 1043).
¶ 19 Fillmore's allegations demonstrate the first four elements of a claim for tortious business interference. He stated that the Schmitts either had been "considering purchasing" or "had pretty much made up their minds to buy" a water system from him. See Restatement § 766B, cmt. c ("Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts."); see also Hirsch v. Cooper, 153 Ariz. 454, 460, 737 P.2d 1092, 1098 (App.1986) (validity of business expectancy is question of fact), disapproved on unrelated grounds by Godbehere, 162 Ariz. at 342 n. 5, 783 P.2d at 788 n. 5. Fillmore also asserted that Owen knew of this expectancy and that he made his statements with the intent or hope that he could derail the Schmitts' negotiations with Fillmore. See Safeway Ins. Co. v. Guerrero, 210 Ariz. 5, 10 ¶ 14, 106 P.3d 1020, 1025 (2005) (competitor's knowledge that competing offer could interfere with another's prospective economic advantage may demonstrate intent to interfere). The potential damage resulting from Owen's alleged statements is suggested by Fillmore's contention that the Schmitts told him that they "could not feel good about buying from [him] until these allegations were cleared up."
¶ 20 The most important element in a claim for tortious business interference is the improper "motive or means" of the interference, Wagenseller, 147 Ariz. at 388, 710 P.2d at 1043, and the use of fraudulent misrepresentations is one form of improper interference with another's business potential:
Fraudulent misrepresentations are ... ordinarily a wrongful means of interference and make an interference improper. A representation is fraudulent when, to the knowledge or belief of its utterer, it is false in the sense in which it is intended to be understood by its recipient.
See Restatement § 767, cmt. c. Fillmore alleges that Owen fraudulently misrepresented the business practices of ASK/H20 and its products in order to prevent Fillmore's sale to the Schmitts. We therefore conclude that Fillmore stated a valid cause of action for tortious business interference and remand this matter for further proceedings on this cause of action.

C. Fillmore's Claim for Defamation
¶ 21 Perhaps the most contentious cause of action presented by Fillmore is the one for defamation, given the conclusion by Kinetico and the superior court that *705 Owen's alleged statements related only to ASK/H20 and not Fillmore. Although the following list of elements has been described as "deceptively simple," see 1 Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems § 2.1, at 2-5 (3d ed.2004), the applicable section of the Restatement includes four main elements for defamation:
1. a false and defamatory statement concerning the plaintiff;
2. "an unprivileged publication to a third party;
3. fault amounting at least to negligence on the part of the publisher"; and
4. "actionability" of the statement either due to special harm caused by the publication or irrespective of special harm given the nature of the allegation.
See Restatement (Second) of Torts § 558; see also Boswell, 152 Ariz. at 3, 5 n. 3, 730 P.2d at 180, 182 n. 3 (citing all elements but damages and referring to Restatement § 558).
¶ 22 In contrast to the previous two legal theories, in which general statements regarding a plaintiff's business or product may give rise to a claim for relief, a claim for defamation must be based on a statement that is "of and concerning" the plaintiff himself. See, e.g., Hansen v. Stoll, 130 Ariz. 454, 458, 636 P.2d 1236, 1240 (App.1981) (burden on plaintiff to show publication "of and concerning" him) (citing inter alia Restatement §§ 564, 617); Modla v. Parker, 17 Ariz.App. 54, 56-57, 495 P.2d 494, 496-97 (1972) (to constitute slander per se in business context, plaintiff must show defamation "of and concerning" plaintiff's personal business practices). However, Fillmore identifies one of Owen's alleged statements that is sufficient to present a viable question of defamation, namely, the "crooks/rip-off" statement.
¶ 23 Although the "crooks/rip-off" statement does not name Fillmore, the legal theory of "group defamation" recognizes that the defamatory statement need not name the plaintiff specifically. "Group defamation" is a corollary of the "of and concerning" requirement. See Hansen, 130 Ariz. at 458, 636 P.2d at 1240. Under this theory, a plaintiff may sue based on a defamatory communication that refers to
a group of persons . . . [so long as the statement] reasonably relate[s] to a certain individual member or members. If the group is so large, or the statements so indefinite, that the objects of the defamatory statements cannot be readily ascertained, the statements are not actionable.
Id. (citations omitted). According to Fillmore, Owen allegedly referred to "the people at H20" as "crooks" with the knowledge that the Schmitts had met with an ASK/H20 representative, i.e., Fillmore, immediately before his arrival. Although the size of the group usually is a significant and relevant factor in determining whether the "group libel" theory is applicable, id. at 458, 636 P.2d at 1240, and although Fillmore did not allege how many people work for ASK/H20, the contention that Owen made this statement soon after Fillmore's departure provides Fillmore with some basis to argue that the "crooks/rip-off" statement was made "of and concerning" him. Furthermore, the Schmitts told Fillmore that they had felt that "[Owen's] allegations included him." Thus, Fillmore's claim for defamation may be actionable under recognized legal theories. See id. at 459, 636 P.2d at 1241 (whether plaintiff identified by defamatory statement question for trier of fact).[5]
¶ 24 Given these principles, the authority cited by the superior court does not support the dismissal. The court relied primarily on an opinion from a United States Court of Appeals, Emerito Estrada Rivera-Isuzu De P.R. v. Consumers Union of United States, Inc., 233 F.3d 24 (1st Cir.2000). That case involved an Isuzu distributor who claimed damages due to a Consumer Reports article in which the Isuzu Trooper was reviewed. *706 In the portion of the opinion cited by the superior court, the appellate court upheld the dismissal of the distributor's defamation claim because Consumer Reports criticized the vehicle and, therefore, the article was not "of and concerning" the distributor. Id. at 29-30. In fact, the court specifically stated that "[t]he problem of generalized criticism ... is not present here; the question in this case is whether the law will permit recovery by a third party related to the person specifically criticized." Id. at 28.[6]
¶ 25 Kinetico's citations regarding "derivative defamation claims" also are inapposite and do not undermine the well-established principles permitting actions based on "group defamation" statements. Cases involving family members who sue based on a defamed relative or investors in a corporation that has been defamed are irrelevant because, in those cases, the defamation was not "of or concerning" the plaintiffs; the defamatory statement was "of or concerning" either the relative or the corporation. See, e.g., Downtown Grill, Inc. v. Connell, 721 So.2d 1113, 1121-22 ¶ 34 (Miss.1998) (parents of child); Ramos v. City of Peru, 333 Ill.App.3d 75, 266 Ill.Dec. 622, 775 N.E.2d 184, 189 (2002) (spouse); Sethi v. WFMJ Television, 134 Ohio App.3d 796, 732 N.E.2d 451, 462 (1999) (family members); Talbot v. Johnson Newspaper Corp., 124 A.D.2d 284, 508 N.Y.S.2d 80, 83 (App.Div.1986) (spouse). See also AIDS Counseling & Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1005 (4th Cir.1990) (stockholders); Gilbert Shoe Co. v. Rumpf Pub. Co., 112 F.Supp. 228, 229 (D.Mass.1953) (stockholders or officers).
¶ 26 Given the availability of the "group defamation" theory to satisfy the requirement that the alleged defamation be "of and concerning" Fillmore, Fillmore's allegations sufficiently relate to the first two elements of defamation. He claimed that the "crooks/rip-off" statement that Owen "published" to the Schmitts was false and defamatory. See Godbehere, 162 Ariz. at 341, 783 P.2d at 787 (defamatory statement either must "bring the defamed person into disrepute, contempt, or ridicule, or ... impeach plaintiff's honesty, integrity, virtue, or reputation."); see also State v. Superior Court (Ford), 186 Ariz. 294, 299, 921 P.2d 697, 702 (App.1996) ("Each communication of a defamatory statement, even though identical in content, constitutes a separate publication....") (citing Restatement § 577A(1) & cmt. a). If the trier of fact determines that Owen's "crooks/rip-off" statement to the Schmitts was "of and concerning" Fillmore, the trier also might conclude that this statement impugned Fillmore's honesty, integrity, virtue and reputation. See, e.g., In re Langworthy, 39 Ariz. 523, 527, 8 P.2d 245, 247 (1932).
¶ 27 Fillmore's allegations also satisfy the applicable level of fault for defamation. Although the Arizona and United States Constitutions limit a defendant's liability when the challenged statement concerns either a "public figure" or "official" or an issue of "public concern," these limitations do not apply in this case. See Boswell, 152 Ariz. at 11, 730 P.2d at 188 (constitutional protections limited when plaintiffs neither public officials nor public figures). Because Owen's statement concerns a private person and a matter of "private concern," Fillmore need only have alleged that Owen made the statement knowingly, recklessly or negligently. Peagler v. Phoenix Newspapers, Inc., 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977) (citing Restatement § 580B); see also Dun & Bradstreet, Inc. v. Greenmoss Builders, 472 U.S. 749, 762, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (plurality opinion) (when alleged defamation "solely in the individual interest of *707 the speaker and [his] specific business audience," defamation "concerns no public issue"). By alleging that Owen made the "crooks/rip-off" statement either knowing that the statement was false or without sufficiently investigating the statement's truth before publishing the statement to the Schmitts, Fillmore satisfied this aspect of his defamation cause of action.
¶ 28 Finally, the "crooks/rip-off" statement and Fillmore's allegations present an "actionable" claim for defamation. See Restatement § 558(d). A defamatory statement provides a basis for relief only if the statement causes demonstrable injury, see, e.g., Modla, 17 Ariz.App. at 56-57, 495 P.2d at 496-97, or is so potentially injurious to one's reputation that the statement qualifies as defamation per se. See, e.g., McClinton v. Rice, 76 Ariz. 358, 365, 265 P.2d 425, 429-30 (1953). Even if Fillmore had failed to allege specific and recoverable losses stemming from the "crooks/rip-off" statement, this statement arguably qualifies as defamation per se, see, e.g., Vacca v. Gen. Elec. Credit Corp., 88 A.D.2d 740, 451 N.Y.S.2d 869, 870 (App.Div.1982) (statements by defendant creditor that plaintiffs "are crooks and hijackers and you are going to find a lot of your units missing, and if you leave your merchandise here and don't entrust it to [defendant] for safe-keeping, you will find more will be missing" made in plaintiffs' place of business clearly slander per se in context), and thus would be actionable without a need to plead special damages or malice. See, e.g., Kinsey v. Real Detective Pub. Co., 52 Ariz. 353, 358, 80 P.2d 964, 967 (1938) (As to libel per se, "the law presumes its falsity and that it was published with malicious intent.").
¶ 29 For the preceding reasons, we conclude that Fillmore alleged all of the necessary elements for a defamation action by a private person regarding a matter of private concern. We therefore remand this matter on this cause of action.

D. Absolute Privilege to Bar Fillmore's Claims
¶ 30 Although Fillmore's allegations address each element of the theories of injurious falsehood, tortious business interference and defamation, we nonetheless will affirm the dismissal if correct on any legal basis. See, e.g., Rutledge v. Ariz. Bd. of Regents, 147 Ariz. 534, 552, 711 P.2d 1207, 1225 (App.1985). We therefore must consider whether any other legal principle bars Fillmore's claims for relief. For example, Arizona courts have upheld the dismissal of properly pled claims for injurious falsehood and defamation when an absolute privilege applied to shield the defendant from liability based on the alleged statements. See, e.g., W. Techs., 154 Ariz. at 4-5, 739 P.2d at 1321-22 (injurious falsehood); Chamberlain, 151 Ariz. at 554, 729 P.2d at 908 (issue of absolute privilege to defamation permissible consideration in Rule 12(b)(6) proceeding).
¶ 31 Arizona courts have recognized an absolute privilege for statements made during judicial, legislative or executive proceedings, by litigators in the furtherance of litigation and when the publication is required by law. See Giles v. Hill Lewis Marce, 195 Ariz. 358, 361 ¶ 7, 988 P.2d 143, 146 (App.1999) (judicial proceedings); Lewis v. Oliver, 178 Ariz. 330, 335, 873 P.2d 668, 673 (App.1993) (legislative or executive proceedings); Green Acres Trust v. London, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984) (litigators); Paros v. Hoemako Hosp., 140 Ariz. 335, 338, 681 P.2d 918, 921 (App.1984) (required by law). Other than consent, the only other absolute privilege to defamation and injurious falsehood recognized by the Restatement is a publication between spouses. See Restatement § 592; see also id. at § 635 ("The rules on absolute privilege to publish defamatory matter stated in §§ 583 to 592A apply to the publication of an injurious falsehood."). None of these absolute privileges invalidates Fillmore's "inter-salesmen" claims for defamation or injurious falsehood because no absolute privilege applies on the face of the allegations.[7]
*708 ¶ 32 With respect to Fillmore's claim of tortious business interference, the Arizona Supreme Court "long ago rejected the `formalistic privilege concept in favor of a requirement that an interference be "improper" for liability to attach.'" Safeway Ins. Co., 210 Ariz. at 10 ¶ 15, 106 P.3d at 1025 (quoting Wagenseller, 147 Ariz. at 388, 710 P.2d at 1043). Instead, "the requirement that the defendant's interference be improper `covers essentially the same ground as "privilege."'" Id. at 10 n. 7, 106 P.3d 1020, 106 P.3d at 1025 n. 7 (quoting Snow v. W. Sav. & Loan Ass'n, 152 Ariz. 27, 34, 730 P.2d 204, 213 (1986)). A business competitor who "interferes with the prospective contractual rights of another" does not do so tortiously "simply because he may also bear ill will toward his competitor," Hill v. Peterson, 201 Ariz. 363, 366 ¶ 8, 35 P.3d 417, 420 (quoting Bar J Bar Cattle, 158 Ariz. at 485, 763 P.2d at 549), and "the propriety of the means employed by" the interfering party must be "determined in light of the particular circumstances of the case." Safeway Ins. Co., 210 Ariz. at 13 ¶ 28, 106 P.3d at 1028. However, as previously described, the Restatement specifically identifies fraudulent misrepresentations as an "improper means," and we will not conclude as a matter of law that the whole-home water-system business permits salesmen to defame and spread injurious falsehoods about one's competitor as Fillmore claims that Owen did. We thus conclude that Fillmore alleged a colorable claim of tortious interference with a prospective business relationship.

E. Maricopa Water's Vicarious Liability
¶ 33 Fillmore's allegations relate almost entirely to statements made by Owen as opposed to any alleged direct action by Maricopa Water. Therefore, in order for Fillmore's allegations to constitute valid claims for relief against Maricopa Water as well as Owen, Fillmore's allegations must satisfy the requirements of the doctrine of respondeat superior. Cf. Hovatter v. Shell Oil Co., 111 Ariz. 325, 326, 529 P.2d 224, 225 (1974) (reviewing liability of one defendant "under the doctrine of respondeat superior or any other theory reasonably framed by the pleadings" before affirming summary judgment).
¶ 34 The doctrine of respondeat superior serves two purposes: First, to encourage employers to monitor their employees' activities to ensure that they are not involved in tortious activities and, second, to force employers that benefit from their employees' tortious acts to compensate the victims. Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc., 197 Ariz. 535, 545 ¶ 42, 5 P.3d 249, 259 (App.2000). Arizona courts will hold an employer vicariously liable for
the negligent or tortious acts of its employee acting within the scope and course of employment. Conduct falls within the scope if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it.
Id. at 540 ¶ 17, 5 P.3d at 254 (citations omitted). See also Santiago v. Phoenix Newspapers, Inc., 164 Ariz. 505, 508-09, 794 P.2d 138, 141-42 (1990) (whether a master-servant relationship exists is an objective determination to be made by the trier of fact).
¶ 35 The courts of other states have held employers liable for torts such as defamation, injurious falsehood and tortious business interference by relying on similar principles of agency as those recognized by Arizona courts. See, e.g., Canto v. J.B. Ivey & Co., 595 So.2d 1025, 1028 (Fla.App.1992) (holding that corporate employer could be vicariously liable for employee's defamation and intentional infliction of emotional distress); Embrey v. Holly, 293 Md. 128, 442 A.2d 966, 973 (App.1982) (holding that employer can be vicariously liable for punitive damages for defamatory statements made by its employee); Seymour v. New York State Elec. & Gas Corp., 215 A.D.2d 971, 627 N.Y.S.2d 466, 468 (App.Div.1995) (holding that employer could be vicariously liable for employee's alleged slander if employee acted within scope of employment); Coney v. Fagan, 195 Or.App. *709 282, 97 P.3d 1252, 1254-56 (2004) (holding that employer could be liable for defamation and intentional interference with economic relations); Murray v. Holnam, Inc., 344 S.C. 129, 542 S.E.2d 743, 748 (App.2001) ("[A] principal may be held liable for defamatory statements made by an agent acting within the scope of his apparent authority."). Because Owen made his statements in the course and scope of his employment by Maricopa Water and because Owen's statements may be actionable, Fillmore stated viable claims for relief against Kinetico. See, e.g., Phoenix Newspapers, Inc. v. Church, 24 Ariz.App. 287, 301, 537 P.2d 1345, 1359 (1975) (concluding that employer could be liable for employee's defamatory statements made within scope of employment pursuant to "well-settled principles of agency law"), appeal dismissed, 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 759, reh'g denied, 425 U.S. 985, 96 S.Ct. 2193, 48 L.Ed.2d 811 (1976).

F. Attorneys' Fees Sanction
¶ 36 The judgment also included an award of attorneys' fees to Kinetico. The only basis provided in Kinetico's application for fees was a theory of "harassment," see Ariz.Rev.Stat. §§ 12-341.01(C), 12-349(A)(1) (2003), namely, that Fillmore had filed this action knowing that it was "unjustified." See, e.g., Harris v. Reserve Life Ins. Co., 158 Ariz. 380, 383, 762 P.2d 1334, 1337 (App.1988). However, given our conclusion that Fillmore's allegations constitute viable claims for relief against both Owen and Maricopa Water, we vacate the award of fees to Kinetico. For this same reason, we deny Kinetico's request for appellate attorneys' fees.

CONCLUSION
¶ 37 Fillmore's amended complaint describes colorable theories of injurious falsehood, tortious business interference and defamation against Kinetico. We therefore reverse the judgment of dismissal, including the award of attorneys' fees to Kinetico, and remand this matter for further proceedings consistent with this opinion.
CONCURRING: G. MURRAY SNOW and JOHN C. GEMMILL, Judges.
NOTES
[1] When reviewing a dismissal pursuant to Arizona Rule of Civil Procedure ("Rule") 12(b)(6), we must assume the truth of all allegations in the complaint and resolve all inferences from the record in the plaintiff's favor. Maldonado v. S. Pac. Transp. Co., 129 Ariz. 165, 166, 629 P.2d 1001, 1002 (App.1981).
[2] A politician sued a local newspaper based on a series of editorial articles. The court observed that, when "public figures are involved in issues of public concern, the Constitution contemplates a bias in favor of free speech." Id. at 616, 892 P.2d 611.
[3] The court in Gosnell referred to the federal constitution's "case and controversy" requirement as expressed in Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Id. at 780 n. 3. Arizona courts do not require a "rigid adherence to the three-prong test of Warth" because the Arizona Constitution "ha[s] no counterpart to the `case or controversy' requirement of the federal constitution." Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs., 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). See also Sears v. Hull, 192 Ariz. 65, 71 ¶ 24, 961 P.2d 1013, 1019 (1998) ("[W]e are not constitutionally constrained to decline jurisdiction based on lack of standing.").
[4] On appeal, Kinetico presents a new argument that the monetary damages sought by Fillmore are insufficient to invoke the jurisdiction of the superior court but belong in a justice court. We reject this argument for two reasons: First, this argument is being offered for the first time on appeal. See Trantor v. Fredrikson, 179 Ariz. 299, 301, 878 P.2d 657, 659 (1994). Second, Fillmore also sought general injunctive relief and "the justice court is a court of limited jurisdiction [that] lacks the discretionary authority or injunctive power to fashion a remedy not specifically authorized by" statute. State ex rel. Milstead v. Melvin, 140 Ariz. 402, 406, 682 P.2d 407, 411 (1984).
[5] Kinetico cites Golden North Airways v. Tanana Publishing Co., 218 F.2d 612 (9th Cir.1954), in which a corporation sued a publication on a theory of "group libel." The airline lost not on an invalid legal theory, as Kinetico suggests, but on a factual basis, namely, the jury's special finding that the allegedly libelous statements in the article did not include all of the airlines. Id. at 621.
[6] Although the court also upheld the dismissal of the distributor's claims for product disparagement and tortious business interference, id. at 30-31, it provided no support for the dismissal in this case. The court affirmed the dismissal of the product disparagement claim because the distributor had failed to distinguish that claim from the defamation claim. Id. at 30. It affirmed the dismissal of the interference claim because the distributor had failed "to identify any specific relationships that were injured or threatened." Id. By contrast, Fillmore's basis for his defamation claim (the "crooks/rip-off" statement) is separate from his basis for his injurious falsehood claim (the other five statements), and Fillmore alleges a specific lost opportunity (his commission from his sale to the Schmitts). Thus, the holding of the court in Consumers Union is consistent with Arizona authority and fails to address the issue of "group defamation."
[7] Although both "absolute" and "qualified" privileges exist for defamatory or injurious statements, see, e.g., Green Acres Trust, 141 Ariz. at 612-13, 688 P.2d at 620-21, because qualified privileges depend on the occasion and the scope of the privilege, rarely can a reviewing court determine that a qualified privilege exists as a matter of law to bar the plaintiff's action. See Burns v. Davis, 196 Ariz. 155, 164 ¶ 36, 993 P.2d 1119, 1128 (App.1999).